William P. ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Plaintiff,

v.

ENGELHARD INDUSTRIES, INC., Defendant.

Civ. No. 411–59.

United States District Court
D. New Jersey.
May 11, 1960.

Chester A. Weidenburner, U. S. Atty., Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., David Moses, Atty., Office of Alien Property, Dept. of Justice, Washington, D. C., for plaintiff.

Karl Huber, Newark, N. J. (James E. Bryan, Brooklyn Heights, N. J., and Alan C. Rose, Summit, N. J., of counsel), for defendant.

MEANEY, District Judge.

In January of 1936 the defendant's predecessor, Hanovia Chemical and Manufacturing Co. (hereinafter referred to as "Hanovia"), made an agreement with a group of German inventors (hereinafter referred to as the "Spanner Group"), in which the Spanner Group granted a license to make, use and sell high pressure vapor discharge burners for ultra-violet irradiation for all purposes except illumination. In the agreement there was a further grant to Hanovia authorizing it to license and sue others in the field of ultra-violet, high pressure mercury lamps.

By the terms of the agreement Hanovia obligated itself to pay to the licensor a royalty of 2½ percent of the net sales price of all high pressure vapor discharge burners sold which embody or involve the practice of any of the licensed inventions.

In turn the licensor had the responsibility, at its expense, of obtaining and maintaining patent protection and prosecuting infringers. Denial or abandonment of patent protection in any form, including final decision of invalidity of patents in force or subsequently obtained under the agreement, gave Hanovia the right to cancel the agreement unless within ninety days after notice to licensor legal action be taken to enforce the patent rights. Comprehended in the agreement was also the question of denial of patent protection relating to improvements covered by named applications, particularly high pressure and dosage applications. Under these provisions Hanovia had the right to elect not to terminate the agreement, being relieved, however, of any obligation to pay royalties on any improvements as to which protection was denied or abandoned.

The agreement, unless sooner terminated as provided for in the agreement, was to continue "until 1950 or for such longer or shorter period as patent rights of the Licensor covering the high pressure and the dosage feature afford adequate protection for the burners covered by this agreement."

Provision for an exclusive license was made upon payment of a specified sum in addition to the royalties. Hanovia, at least until September 30, 1949, claimed an exclusive license under the agreement.

At the time of the signing of the agreement three patents had been issued to the Spanner Group and fifteen patent applications for additional inventions were pending. Among them was one called "Lighting Device" for an invention by one Germer, a member of the Spanner Group. This had been filed in December, 1930. On March 25, 1938, Germer filed a further application as a continuation of his original application of 1930. On the continuation application patent No. 2,202,199 was issued on May 28, 1940. The original application of 1930

resulted finally in patent No. 2,262,177 issued on November 11, 1941.

On January 1, 1941, Hanovia and the General Electric Company (which in 1939 had acquired rights to some of the patents of the Spanner Group subject, however, to the exclusive rights of Hanovia in the field of ultra-violet high pressure mercury vapor lamps) entered into an agreement to which the Spanner Group was a third party signatory, and which incorporated the 1936 contract. In this agreement Hanovia waived its exclusive rights to certain features of patent No. 2,202,199 and in return received from General Electric rights under other patents not secured under the original agreement of 1936. In the 1941 agreement the royalty obligations of Hanovia were modified, and there was reserved to Hanovia the right to enforce patent No. 2,202,199. This agreement was to be for seventeen years, the life of patent No. 2,202,199.

Application for a patent on the dosage feature of the invention was abandoned during a Patent Office interference proceeding before the execution of the Hanovia-General Electric agreement.

After the outbreak of war between the United States and Germany, the Alien Property Custodian seized the interests of the Spanner Group in the two aforementioned agreements. Thereafter, until September 30, 1949, Hanovia paid to the said Custodian the royalties which, except for the seizure, would have been due the Spanner Group. Since that date no royalties have been paid.

In 1948 the Westinghouse Electric Corporation, having been accused by Hanovia of infringement of its rights under the two patent license agreements, brought suit against Hanovia for a declaratory judgment that there was no infringement of any of Hanovia's patent rights. The suit was tried by this court which rendered its decision that there was no trespass upon the Germer patent, not finding that the Germer patent was invalid but simply asserting that the Westinghouse product did not infringe on the Germer patent. Westinghouse Electric Corporation v. Hanovia Chemical & Manufacturing Co., D.C.D.N.J.1948, 78 F.Supp. 403. The patent relied on by Hanovia in that suit was No. 2,202,199.

On appeal (Westinghouse Electric Corporation v. Hanovia Chemical & Manufacturing Co., 3 Cir., 1949, 179 F.2d 293) the Court of Appeals for the Third Circuit upheld the finding of this court and found that there was a substantial difference between Westinghouse's electrode and the special kind of activated electrode disclosed by the specification of the Germer patent No. 2,202,199. Germer, in his invention of his specially activated electrode, having an electro-positive metal with a heat insulating highly resistant material applied thereto, had relegated ordinary activated electrodes to the prior art, in so far as operability in his inventive combination was concerned, thereby limiting the claims of his patent to specially activated electrodes of the type which the patent taught were operable.

The instant proceeding arises out of two motions, one by the defendant (which is the successor of Hanovia) for summary judgment, and the other by the plaintiff for partial summary judgment on counts 1 and 2 of the complaint.

It seems that the resolution of both motions depends on whether the court finds that the Westinghouse decision constitutes an eviction, since it appears not to have constituted a formal *denial* of patent protection by a declaration of invalidity nor such a restriction in the scope of the patent as to predicate a curtailment or loss of adequate protection.

Defendant Hanovia contends that by the Westinghouse decision this court so narrowed the coverage of the Germer patent that effectively Hanovia was evicted from the license. This position seems hardly tenable in the light of the fact that no claims of the Germer patent under which Hanovia was licensed were limited by the Westinghouse determination beyond the area of limitation previously encompassed by the specifications which restricted the scope of the Germer patent's claims.

Another factor to be considered is the defendant's persistence in asserting its rights under the patent, subsequent to the finding in the Westinghouse case. For approximately five years after the entry of the order in that case, defendant continued to sell high pressure vapor discharge burners with patent notices affixed to some of them. These notices included some of the patents of the Spanner Group mentioned in the agreements hereinbefore referred to, and contained in Schedule A annexed to the complaint, including No. 2,262,177 and No. 2,202,-199. It is beyond dispute that it was the policy of Hanovia to affix such notices before Westinghouse, and it requires a deal of naivete to believe that the continuation of such practice for an extended time after that decision was unauthorized or done without the knowledge of responsible officials of Hanovia. Under the circumstances Hanovia, by its affixment of the patent notices, has placed itself in the unenviable position of having supported the very contention which now it would deny, namely, that the protection of the patent persisted after the Westinghouse decision.

Defendant urges the similarity between this action and the Westinghouse decisions, on the one hand, and Frost Ry. Supply Co. v. T. H. Symington & Son, D.C.D.Md.1938, 24 F.Supp. 20 and T. H. Symington & Son v. Symington Co., D.C.D.Md.1935, 9 F.Supp. 699, on the other hand. T. H. Symington & Son brought a patent infringement action against the Symington Co. In order to prevent a declaration of invalidity of Symington & Son's patent, the court construed the patent narrowly and held that, as so construed, the patent was not infringed by the defendant's device. Subsequently, the unsuccessful plaintiff became the defendant in a declaratory judgment action brought by a licensee (Frost Ry. Supply Co.) under this patent. The licensee claimed that by virtue of the narrow construction in the earlier decision, it had been evicted in substance from the enjoyment of its license, and sought relief from the payment of all royalties. The court held that the licensee need not pay royalties for devices sold after the date of the earlier decision of non-infringement. Since its decision was based upon the ambiguous language of the license contract construed in the light of the relations of the parties and the surrounding circumstances, these factors must be examined by this court in order to determine whether there is indeed the compelling similarity urged by defendant. That license contract provided:

"'6. This contract to be good for the life of our patent, provided, of course, our patent is not *over-ruled* in Courts, in which event the contract terminates.' * * *"

The licensor contended that the narrower meaning of "invalidated" should be given to "over-ruled" in the quoted provision, because the earlier decision did not declare the patent invalid. The court disagreed, noting that since the parties felt that the manufacture of the device sought to be enjoined in the earlier decision was an infringement, a decision of non-infringement did in substance "overrule this mutual conception of the defendant's (licensor's) patent rights * * *". 24 F.Supp. at page 27. Accordingly, the court held that the decision of non-infringement terminated the license contract.

This court is of the opinion that the language of the contract herein involved does not suffer from ambiguity sufficient to permit resort to extrinsic facts and circumstances, if any there be. There is no reason why the parties to the license agreement, in full awareness of its provisions, should not be held to the accepted meaning in patent parlance of "a final decision holding such patents invalid" which the license agreement equates with a denial of patent protection. As indicated, the Westinghouse decisions did not hold No. 2,202,199 invalid.

In view of the foregoing the court is of the opinion that the plaintiff is entitled to prevail as to count 1.

■ There is a further situation to be considered, viz.—in the light of the granting of the motion for summary judgment on the claim of the plaintiff

for royalties, is plaintiff also entitled to summary judgment on the second count of the complaint, for damages sustained because of the failure of the defendant company to promote the manufacture and sale of products under the patents of the Spanner Group included in the agreement of 1936?

This would seem to follow as a natural course from the granting of the motion as to count 1, as the defendant claims that it became impractical to manufacture such products because of competition after the Westinghouse decision. That decision did not relieve the defendant of the obligation to use its best efforts to manufacture and sell devices produced under the mentioned patents. However, whether such efforts would be feasible and profitable is another question, upon which would depend the amount of damages, if any, the plaintiff may have suffered.

The motion of the plaintiff for partial summary judgment as to counts 1 and 2 is granted, liability on the part of the defendant being satisfactorily evidenced from the pleadings and affidavits. The amounts due, if any, are left to trial.

The defendant's motion is denied.

Let an order be submitted.