Robert F. KENNEDY, Attorney General of the United States, as Successor to the Alien Property Custodian

v.

ENGELHARD INDUSTRIES, INC., Appellant.

No. 13372.

United States Court of Appeals Third Circuit.

Argued Dec. 15, 1960.

Decided April 5, 1961.

KALODNER, Circuit Judge.

This appeal, taken pursuant to authorization under 28 U.S.C. Section 1292(b), is from a summary judgment as to liability only entered against the defendant in the District Court for the District of New Jersey on Counts 1 and 2 of plaintiff's Complaint. Jurisdiction was invoked under 28 U.S.C. Section 1345 and under the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix, Section 17.

The issues presented are, first, whether the defendant is relieved from the payment of royalties on patents under the terms of a license previously granted to its predecessor by the asserted termination of the license, or, by the asserted eviction of the licensee (Count 1), and, second, whether the defendant is responsible for damages for failure to use its best efforts to make and market the licensed inventions (Count 2).

The defendant's predecessor ("Hanovia") entered into an agreement with certain German inventors (the "Spanner Group")[1] effective as of January 1, 1936, under which the Spanner Group granted a license to make, use and sell a number of claimed inventions relating to high pressure vapor discharge burners for ultra-violet irradiation, but excluding the use for illuminating purposes. At the time, some of the claimed inventions were patented, and some were in the application stage. Under paragraph 2 of the license, Hanovia agreed to pay a royalty of $2\frac{1}{2}\%$ on the net sales of all burners which embodied or involved the practice of any of the licensed inventions and of $2\%$ on all charges for repairs to such burners. By paragraph 3,[2] to use the

James E. Bryan, Newark, N. J. (Karl Huber, Newark, N. J., Alan C. Rose, Summit, N. J., on the brief), for appellant.

David Moses, Washington, D. C. (Dallas S. Townsend, Sp. Asst. to the Atty. Gen., Chester A. Weidenburner, U. S. Atty., Dist. of New Jersey, Charles H. Hoens, Jr., Asst. U. S. Atty., Newark N. J., Irving Jaffe, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

1. This action was brought by the Attorney General of the United States as successor to the Alien Property Custodian. Executive Order No. 9788 (11 F.R. 11981, October 14, 1946), 50 U.S.C.A.Appendix, § 6 note. By Vesting Order No. 2506 (8 F.R. 16343, December 4, 1943), the contract rights and interests of the Spanner Group, insofar as any such rights appear in this case, were vested in the then Alien Property Custodian.

2. The exact language of this provision is as follows:
   "3. The license herein granted shall be exclusive within the field of ultraviolet radiation as defined in Paragraph '1' so long as royalties shall have been paid in amounts at least:
   "One thousand dollars ($1,000.00) from October 1, 1936 to October 1, 1937.
   "Twelve hundred and fifty dollars ($1,250.00 from October 1, 1937 to October 1, 1938.

language of the plaintiff, "Hanovia could obtain and maintain an exclusive license by paying certain specified minimum royalties. In this connection, if patent protection was not obtained on high pressure burners and on high pressure burners with limited dosage of metal, with claims at least as broad as the claims stated in an Appendix annexed to such agreement, and if Hanovia wanted to maintain its position as an exclusive Licensee, it was required to pay a minimum of $1,750.00 a year each year after October 1, 1938; but if patent coverage was obtained on claims as broad as those stated in the Appendix, then Hanovia was required to pay a minimum of $2,000.00 per year thereafter for the privilege of enjoying an exclusive license under the agreement." Under paragraph 9, Hanovia agreed to grant to the Spanner Vapor Lamp Company, a New York corporation (but not otherwise identified), a license for the use in the illuminating field of any patents relating to high pressure vapor electric arc lamps owned by Hanovia so long as the license granted by the Spanner Group to Hanovia remained exclusive within the limited field above briefly described. Paragraph 6 provided that the Licensor should have the responsibility to obtain and maintain patent protection and to prosecute infringers, with rights in the Licensee to terminate or relieve itself of royalties in certain circumstances. Paragraph 13 provided that the agreement, unless sooner terminated under other provisions, "shall continue until 1950 or for such longer or shorter period as patent rights of the Licensor covering the high pressure and the dosage feature afford adequate protection for the burners covered by this agreement."

"Seventeen hundred and fifty dollars ($1,750.00) each year thereafter until patents shall be granted to the Licensor on high pressure burners and on high pressure burners with limited dosage of metal with claims at least as broad as the claims attached hereto and marked Appendix A, and

"Two thousand dollars ($2,000.00) in each year thereafter; if the royalty sums

It is important to note at this juncture that one of the Spanner Group obtained a patent, No. 2,202,199, on May 28, 1940, as a continuation of an original application filed in 1930. The original application resulted in patent No. 2,262,177, issued on November 11, 1941. These were covered by the license to Hanovia. Prior to January 1, 1941, the Spanner Group abandoned application on the dosage feature referred to in the license during a Patent Office interference proceeding.

On January 1, 1941, Hanovia and the General Electric Company entered into an agreement to which the Spanner Group was a signatory. In this agreement, General Electric and Hanovia granted to each other licenses to use certain patent rights of which they were either owners or licensees. More particularly, Hanovia, whose rights as an exclusive licensee under its agreement of January 1, 1936, with the Spanner Group were specifically recognized in connection therewith, granted to General Electric a non-exclusive license with respect to certain features of Patent No. 2,202,199. Further, the royalty obligations of Hanovia to the Spanner Group were modified as to particular aspects of Patent No. 2,202,199. The agreement further provided that the royalties provided for in the agreement were to be paid only for use of patent rights. Hanovia was granted the right to enforce Patent No. 2,202,199 and other patents covered by the agreement of January 1, 1936 and might prosecute at its own expense any infringement thereof within the scope of that agreement. Hanovia released the Spanner Group from claims growing out of the fact that at the time the agreement of January 1, 1936 was made, a license

paid the Licensor amount to less than the above stipulated minimum sums, the Licensors shall have the right after ninety (90) days notice to make the license nonexclusive, provided however that the Licensee shall have the right to maintain the exclusive feature by paying to the Licensor during this ninety (90) day period such sums as would bring up the payments to the above minimum sums."

had been outstanding with respect to certain patents or applications as to which that agreement had purported to grant to Hanovia an exclusive license. The termination date of the agreement was fixed as May 28, 1957, except in respects not here relevant. That date coincides with the expiration of Patent No. 2,202,199.

After the Alien Property Custodian took over the interests of the Spanner Group in these agreements, and until September 30, 1949, Hanovia paid to the Custodian the royalties which, except for the seizure, would have been paid to the Spanner Group. After that date, no royalties were paid. However, Hanovia has admitted that for some period of time subsequent to September 30, 1949, it did affix to some appliances (health lamps) a notice of the type "protected by one or more of the following U. S. patents", among those listed being Patents Nos. 2,202,199 and 2,262,177.

On December 27, 1949, this Court entered its decision in Westinghouse Electric Corp. v. Hanovia Chemical & Mfg. Co., 179 F.2d 293, limiting the claim of Patent No. 2,202,199 to a special kind of electrode referred to in the inventor's original application.

The defendant contends that it is not liable for royalties because the agreement of January 1, 1936, terminated under its own provisions, and, in any event, the decision of this Court in the Westinghouse case so narrowed the claim of Patent No. 2,202,199, as to amount to an "eviction", it being asserted that this patent was the key patent under the license. It maintains, upon affidavits, that the narrowed patent could not be marketed with commercial feasibility. Further, it resists the attempt to recover damages for failure to use its best efforts to market the licensed patents not only on the ground of want of commerciality, but also on the ground that the plaintiff's sole remedy is rescission.

The Court below, on motions of both parties for summary judgment, held that the defendant was liable for royalties under the agreement of January 1, 1936, noting that Hanovia had claimed the patent protection granted by the license after September 30, 1949. It rejected the defendant's "eviction" argument not only on the ground that Hanovia had used the protection after the decision, but also on the ground that the decision merely defined the claim in terms of the specifications of the inventor. With respect to the claim of the plaintiff for damages by reason of the failure of the defendant to promote the inventions licensed, it held that the defendant was not relieved of this obligation to use its best efforts in that direction, but whether such efforts would be feasible and profitable related only to the issue of damages. The District Court accordingly entered partial summary judgment for the plaintiff, leaving the amounts due to be determined at trial. Rogers v. Engelhard Industries, Inc., 1960, 183 F.Supp. 573.

Initially, we note that the problems presented turn primarily upon the construction of contracts. The parties have not troubled themselves about getting into the record the facts to establish what law should be applied, being content to apply what the law books yield. It would appear that either New York or New Jersey law applies, but the law the parties have found and seek to apply is generally consistent, nor have we found anything to the contrary.

Upon consideration of this appeal, we are of the opinion that the District Court properly held the defendant responsible for royalties (Count 1), but erred insofar as it imposed liability for damages for failure to promote the inventions (Count 2).

We agree fully with the District Court that our prior decision in the Westinghouse case did not work an "eviction". The patent involved was not declared invalid, and while the narrower construction of its claim results in the fact that it is not so broad as the statement referred to in the agreement of January 1, 1936, as the "Appendix", as far as we can see this would bear only on the amount of payments necessary to maintain the exclusive feature of the license under paragraph 3. With the District Court,

we cannot say there was a failure of consideration. Nor was there a termination under paragraph 13. The "dosage" feature was abandoned soon after the agreement was made, so that if Hanovia thought there was a lack of adequate patent protection after the Westinghouse decision, it would be expected to have given notice clearly renouncing. In recognition of this, the defendant offers certain letters written by Hanovia to the Alien Property Custodian in 1950, but these do not invoke the termination provision of the contract. They indicate a lack of commercial protection, not from infringement, but from devices outside the scope of the license, and insist that Hanovia would not be responsible for royalties on subject matter outside the legitimate scope of the patent claims. As we understand the case, this is not a problem here, for the plaintiff does not seek to recover royalties on subject matter outside the patent claims, nor does he contend that the defendant was precluded from making and selling devices in competition with the licensed inventions.

■ We have no doubt that the defendant should remain liable for the royalties due under the agreement of January 1, 1941 with General Electric, a contract, we note, which the defendant entirely ignores on this appeal. We need only emphasize the provision of this agreement that royalties thereunder should be paid only for actual use of patent rights.

Finally, we agree with the District Court that the defendant cannot be heard to deny its license at the very moment it was claiming its protection by affixing notices to some of its products. We need not here go so far as to say that the notice was of such character as to impose a royalty liability for the article involved, as, for example, in Sproull v. Pratt & Whitney Co., C.C.S.D.N.Y.1899, 97 F. 807, 809, but the notice is adequate to show that Hanovia claimed that its contract rights were still in being.

■ As already indicated, our conclusion with respect to the issue of liability for failure to promote differs from that of the District Court. It implied as a "natural course" a duty to promote from Hanovia's presupposed position as an exclusive licensee. See Mechanical Ice Tray Corp. v. General Motors Corp., 2 Cir., 1944, 144 F.2d 720, certiorari denied Horton v. General Motors Corp., 324 U.S. 844, 65 S.Ct. 679, 89 L.Ed. 1406, a case heavily relied upon by the plaintiff. Although entering partial summary judgment, the District Court recognized the contention of the defendant, buttressed by affidavits, that after the Westinghouse decision it became commercially impractical to market the products involved. However, it related the issue thus created to the matter of damages. Since the matter is subject to trial, and we agree that on this record summary judgment is not indicated, we believe partial summary judgment ought not to have been entered since the facts asserted by the defendant are or may be a complete defense.

However, we go further. We reject the defendant's argument that the sole remedy for failure to promote, where the duty exists, is rescission. Cf. Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 1940, 115 F.2d 268, reversed on other grounds 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. But the plaintiff's argument, and the District Court's conclusion, that the duty to promote existed is derived from an assumption that is not supported by the agreements between the contracting parties.

The theory upon which the claim for damages is founded, as asserted by the plaintiff, is "that the productiveness of the licensor's property having been placed solely within the control of the licensee, a covenant on its part to work the patent in good faith to make it produce royalty income will be implied." Mechanical Ice Tray Corp. v. General Motors Corp., supra, 144 F.2d at page 725.

In the instant case, under paragraph 1 of the agreement of January 1, 1936, Hanovia was granted a royalty license. Paragraph 3 determines the conditions under which the license would be exclu-

sive. The paragraph is not an example of excellence in legal draftsmanship: it first provides that upon the failure of Hanovia to make the stated minimum payments the exclusive feature automatically terminates, but then provides for notice and opportunity to redeem, as though it were, so to speak, a right of entry for breach of a condition subsequent. The plaintiff's own statement of the paragraph, quoted above, would indicate the interpretation that Hanovia could obtain and maintain the exclusive feature only by paying the specified minimum royalties. However one may enjoy the legal technicalities of the paragraph and despite the rather apparent inference that the Spanner Group would have had no cause for complaint if the minimum payments were met, the fact is that Hanovia did not make the minimum payments after September 30, 1949. At this point, neither the Spanner Group, if it had been in control, nor the Alien Property Custodian was in the position of choosing between rescinding the license or maintaining an action for damages. The contract specifically authorized the Spanner Group, or one standing in their shoes, to force Hanovia to meet the payment schedule or give up the exclusive feature. And the Spanner Group had the right to assume the promotion of their own inventions, relegating Hanovia to the status of a nonexclusive licensee. It does not appear that the Alien Property Custodian ever gave the notice provided for in paragraph 3, although he or his successors were in control since 1943. But this fact is not decisive.

It would be unjust to burden the defendant with an obligation to promote, which stems from the failure to give the notice, where a substantial period of time has elapsed and particularly where considerations cther than the natural interest of a licensor in the success of his invention may have dictated the course of action.

Thus, the Spanner Group, while not in control in 1949, might have chosen to permit the course adopted by Hanovia, bearing in mind that the additional consideration for the exclusive feature was the promise of Hanovia to grant a license of its own patents to the Spanner Vapor Lamp Company, the term of which was to coincide with the existence of exclusive rights in Hanovia of the Spanner Group inventions. So also, considerations relative to the functioning of the office of the Alien Property Custodian or the Attorney General might dictate against promotion by either office of the inventions involved.

The fact remains, that by design, the Spanner Group was not at the mercy of a nondefeasible exclusive licensee in the promotion of their inventions. We do not think the General Electric contract of January 1, 1941, alters the situation. While it referred to Hanovia as an exclusive licensee under the 1936 contract, this was true as a matter of fact and by reason of paragraph 3 of that agreement. Outside of a change in the royalty rate specified for a nonexclusive license under paragraph 2 of the 1936 agreement, the 1941 agreement, if anything, confirmed the royalty provisions of the 1936 agreement. Nothing otherwise in the 1941 agreement purports to affect the quality of the license as between the Spanner Group and Hanovia. Since General Electric did not receive an exclusive license from Hanovia, and since the Spanner Group was a signatory to the 1941 agreement, it would not be affected whether or not Hanovia had an exclusive license as to Patent No. 2,202,199.

For the reasons stated the partial summary judgment entered against the defendant on Count 1 will be affirmed and the partial summary judgment entered against defendant on Count 2 will be reversed, and the cause remanded for further proceedings not inconsistent herewith.