PUNDZAK, INC. d/b/a Pundzak Evans
Advertising, Inc., and Joseph S.
Pundzak, Appellants,

v.

Robert A. COOK and Brent Webster
d/b/a Willard & Rafert,
Appellees.

No. 91–1465.

Supreme Court of Iowa.

May 19, 1993.

Richard A. Malm and Gayla R. Harrison of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellants.

Edmund J. Sease and Heidi E. Sease of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

Joseph S. Pundzak and Pundzak, Inc., an advertising agency owned by Pundzak, sued radio performers Robert Cook and Brent Webster for breach of an exclusive agency agreement. Cook and Webster filed a separate suit against Pundzak and his corporation, to whom we will refer as Pundzak, alleging Pundzak's breach of the exclusive agency agreement and abuse of process. Cook and Webster also petitioned for a declaratory judgment to determine the ownership interest in the characters "Willard & Rafert" played by Cook and Webster in the commercials produced by

the parties. The suits were consolidated, but the trial was bifurcated. The breach-of-contract and abuse-of-process issues were tried to a jury, and the declaratory judgment issue was tried to the court.

The jury found against Pundzak in his suit against Cook and Webster. The jury found in favor of Cook and Webster on both their breach-of-contract and abuse-of-process claims against Pundzak. The district court then determined in the declaratory judgment action that the ownership rights in the material and rights in question were to be vested seventy-five percent in Cook and Webster and twenty-five percent in Pundzak.

Pundzak appealed the breach-of-contract and abuse-of-process judgments, and Cook and Webster cross-appealed from (1) the judgment declaring the respective interests in the copyright and trademark material; (2) the failure of the court to allow attorney fees on their abuse-of-process claim; and (3) the failure of the court to enter judgment against Pundzak personally as well as against Pundzak, Inc. on Cook and Webster's breach-of-contract claim. We affirm in part and reverse in part on both the appeal and cross-appeal.

Cook and Webster are performers who have worked in the advertising business separately and together for several years. During that time, they frequently worked with Joe Pundzak. In 1977, Pundzak heard Cook and Webster informally playing the parts of "old timers," and Cook and Webster were soon approached about participating in commercials being produced by Pundzak. The parties agreed that Cook and Webster, playing the parts of the old timers, would be known as Willard & Rafert.

Commercials presented on the Willard & Rafert format were successful, and in 1978 Cook and Webster approached Pundzak to represent them in securing advertising work.

The parties entered into an exclusive agency agreement on July 1, 1979, which provided:

1. Pundzak, Inc., was to be the exclusive agent for Cook and Webster as "Willard & Rafert";

2. Pundzak was to use its "best efforts" to promote the characters;

3. the agreement was terminable at will by any party on sixty days' notice; and

4. the agreement could be modified only by a subsequent writing.

This agreement remained in effect until February 1990, when it was terminated by Cook and Webster.

## I. *The Jurisdiction Issue.*

■ Cook and Webster contend that we lack subject matter jurisdiction of this appeal because it was not filed within thirty days of the judgment in the first half of the bifurcated trial. Pundzak responds that the appeal is timely because it was taken within thirty days of the judgment in the later declaratory judgment action.

■ A judgment is not final unless the rights of the parties have been fully determined. *Decatur–Moline Corp. v. Blink,* 283 N.W.2d 347, 349 (Iowa 1979). When the actions are bifurcated, an appeal is timely if it is from the judgment that finally determines the rights of the parties, a rule necessary to prevent piecemeal appeals. *Poulsen v. Russell,* 300 N.W.2d 289, 293 (Iowa 1981). We conclude that we have jurisdiction because the appeal was taken within the time allowed following the declaratory judgment.

## II. *Breach–of–Contract Issues.*

■ Cook and Webster alleged that Pundzak had failed to comply with the terms of their exclusive agency agreement by failing to use his "best efforts" to promote Willard & Rafert. There was evidence that Cook and Webster's income had diminished in the years just preceding their suit, and that Pundzak had intentionally withheld Cook and Webster's services from potential clients in order to favor another Pundzak client. The jury agreed.

Pundzak complains that (1) a suit for breach of a "best efforts" clause in an agency agreement cannot be maintained

when another remedy such as termination of the agency agreement is available, and (2) Cook and Webster's evidence of damages was insufficient because they failed to show their decreased earnings were the proximate result of any breach.

A. The exclusive agency agreement provided that either party could terminate the agency relationship on sixty days' notice. Cook and Webster claim that Pundzak intentionally withheld his best efforts, largely because of the conflict of interest on the part of Pundzak, and this cost Cook and Webster a substantial amount of income. While Pundzak disputes the factual support for this claim, he argues primarily that it is not permitted as a matter of law.

Pundzak argues that Cook and Webster's remedy was to terminate the agency agreement, not to accept the benefits of Pundzak's performance over a period of years and then sue Pundzak because Pundzak should have done more. In other words, Pundzak seems to argue that, because Cook and Webster had a remedy to prevent damages in the future by terminating the agreement, they are precluded from recovering damages for any past failure to perform.

If we were to accept this argument, we would deny Cook and Webster, as a matter of law, any damages for Pundzak's breach of contract and would in effect ignore those cases that allow a suit for breach of best-efforts provisions. Here, the best-efforts requirement is expressed in the parties' agreement. In many cases, however, such agreements are merely implied by law and yet are uniformly recognized by the courts. *See, e.g., Permanence Corp. v. Kennametal, Inc.*, 908 F.2d 98, 100–02 (6th Cir.1990); *Bailey v. Chattem, Inc.*, 684 F.2d 386, 396 (6th Cir.1982); *Wood v. Lucy, Lady Duff–Gordon*, 222 N.Y. 88, 91, 118 N.E. 214, 214 (1917). *See 3 Corbin on Contracts* § 568, at 331 (1960):

> In any commercial agreement in which the compensation promised by one to the other is a percentage of profits or receipts, or is a royalty on goods sold, manufactured or mixed, there will nearly always be found an implied promise of diligent and careful performance in good faith and of forbearance to make performance impossible by going out of business or otherwise.

Pundzak's argument that a termination of the agency agreement is Cook and Webster's sole remedy was specifically rejected in *Kennedy v. Engelhard Industries, Inc.*, 288 F.2d 642, 646 (3d Cir.1961).

There is nothing in the exclusive agency agreement that suggests that termination is the sole remedy for a breach of the agreement, and we reject Pundzak's argument that we should apply such a rule as a matter of law.

■ B. Pundzak contends that Cook and Webster knew the amount of their income for the years in question, accepted the benefits of their relationship, and are therefore estopped from claiming damages for diminution of income. Cook and Webster introduced evidence of their attempts to remedy the problems through ongoing complaints to Pundzak about his lack of performance. The jury was instructed on estoppel, and they resolved the issue against Pundzak. There is sufficient evidence to support that finding, and that is conclusive on this issue.

■ C. Pundzak argues that Cook and Webster failed to present substantial evidence that any failure of Pundzak to use his best efforts was the proximate cause of damages. At most, he argues, Cook and Webster showed a decrease of income between 1986 and 1990. Cook and Webster's evidence was that they had earned $20,000 less in each of those years than they had in preceding years. The jury set the amount at $15,000 per year. Pundzak argues that no evidence was presented that further engagements for Cook and Webster's spots could have been obtained through better efforts by Pundzak.

The jury found otherwise. There was, for example, substantial evidence that Pundzak failed to pursue the account with Casey's stores in a diligent manner. While Pundzak responds that "since Casey's was ultimately obtained [as a client] that issue was irrelevant to damages," this ignores

the fact that past income from Casey's had been lost; income from the Casey's account at a later date cannot compensate Cook and Webster for what they had lost in the past. We reject Pundzak's proximate cause argument.

### III. *The Damage Awards for Breach of Contract.*

A. Cook and Webster were granted a judgment against Pundzak for $37,200, representing the difference between the fees actually received by them from Pundzak for advertising spots for Allied Insurance Group and the amount they claimed had been due them under their arrangement. (The parties had operated under a 75/25% split, but in the case of Allied, Cook and Webster received only sixty percent.)

■ Pundzak argues that, regardless of what the prior "understanding" was as to a 75/25% split, Cook and Webster expressly agreed to a fee for the Allied spots that amounted to only sixty percent. Cook and Webster, therefore, were not entitled to compensation on the basis of a 75/25% split, according to him.

Cook and Webster respond that they were not given a copy of Pundzak's agreement with Allied, and Pundzak did not tell them what Allied was paying for the spots or that Cook and Webster were only receiving sixty percent. Accordingly, they did not knowingly consent to a 60/40% split.

The parties had previously agreed to a 75/25% split, but this agreement was not put in writing. Nevertheless, we believe this term may become a part of their agency agreement. *See* Restatement (Second) of Contracts § 220 (1981):

(1) An agreement is interpreted in accordance with a relevant usage if each party knew or had reason to know of the usage and neither party knew or had reason to know that the meaning attached by the other was inconsistent with the usage.

(2) When the meaning attached by one party accorded with a relevant usage and the other knew or had reason to know of the usage, the other is treated as having known or having reason to know the meaning attached by the first party.

Under Restatement (Second) of Contracts section 220, comment *c,*

[a]n agreement or term thereof need not be stated in words if the parties manifest assent to it by other conduct, and such assent is often manifested by conduct in accordance with usage. Where there is an integrated agreement, an agreed but unstated term may be annexed by usage on the same principle which controls consistent additional terms generally.

While the agency agreement with Pundzak did not expressly provide for a percentage split, there was substantial evidence that the parties had consistently operated on a 75/25% split, and there was adequate evidence to submit the issue to the jury.

■ B. Pundzak contends that the $37,200 verdict for the Allied account underpayment and a $60,000 verdict for Cook and Webster under their "best efforts" theory are duplicative. We agree. Cook and Webster's claim to the $60,000 was based on the difference between what they actually received and what they should have received under a 75/25% split if Pundzak had used his best efforts. If the $37,200 had been added to the amount actually received, as the jury found it should have been, the recovery under the best-efforts claim would have been reduced accordingly.

While it is true, as Cook and Webster argue, that the $37,200 and the $60,000 were recovered under different theories, the $60,000 verdict still included a second recovery for the same loss. To conclude otherwise would put Cook and Webster in a better position than they would have been if Pundzak had provided his "best efforts" under the agreement. Accordingly, on remand, Cook and Webster's judgment should be reduced by $37,200.

■ Pundzak raises another issue of overlapping recoveries. Cook and Webster originally sued Allied on the theory that Allied, through Pundzak, had used the protected Willard & Rafert material without their consent. Cook and Webster settled

with Allied before trial for $7050 and dismissed Allied as a defendant. The settlement expressly provided that Pundzak was not involved in the settlement.

The jury awarded Cook and Webster this $7050, and Pundzak again claims duplication. Cook and Webster respond that the jury was instructed not to award overlapping damages. Furthermore, they claim, the recovery against Pundzak was under a breach-of-contract theory and the settlement with Allied was for infringement of Cook and Webster's protected interests.

Despite the fact that the jury was instructed to avoid duplicate recoveries, and despite the fact that Cook and Webster's theories of recovery were different as to each defendant, we agree with Pundzak that the effect of the court's instructions and the jury's verdict was to allow Cook and Webster to recover twice for the same loss: once by settling with Allied for $7050 on the infringement claim and once under their claim against Pundzak for withholding that fee from them.

In analogous circumstances in tort cases, the general rule is that:

> The consideration received by one injured as a consequence of a tort committed by two or more tortfeasors operates to reduce, *pro tanto* (to the same extent), the amount of damages he is entitled to recover against any other tortfeasor responsible for his injuries. This is true whether the tortfeasors are joint or independent. This result is mandated by the rule that a plaintiff is entitled to only one recovery for a single injury, and a joint tortfeasor is not a collateral source that can be ignored under the collateral source rule. A jury may have the right to find for a defendant if it believes that the plaintiff has been fully compensated for his injuries by a joint tortfeasor, even though the nonsettling defendant is guilty of negligence contributing to the injuries, or a court may reduce a compensatory damage award to zero in such a situation.

22 Am.Jur.2d *Damages* § 559, at 634 (1988).

The present case does not involve a tort claim against Pundzak, but the *pro tanto* rule would be equally applicable. In tort cases that preceded the adoption of the comparative fault provisions of Iowa Code chapter 668, we discussed the *pro tanto* rule. In *Greiner v. Hicks*, 231 Iowa 141, 300 N.W. 727 (1941), for example, we stated:

> The theory underlying these decisions [on *pro tanto* credit] is that while a party is entitled to full compensation for his injuries there can only be one satisfaction therefor. This court has repeatedly recognized the universal rule that there can be but one satisfaction for an injury.

*Id.* at 146–47, 300 N.W. at 731. *Accord Wadle v. Jones*, 312 N.W.2d 510, 513 (Iowa 1981).

Cook and Webster are entitled to recover the Allied fee, but they are entitled to recover it only once. The district court on remand is instructed to further reduce Cook and Webster's judgment against Pundzak by $7050.

We affirm the judgment on the breach-of-contract claims but remand for reduction of the judgments by $37,200 and $7050, which we find to be duplicative.

## IV. *Abuse-of-Process Claim.*

Pundzak asserts error in the trial court's submission of the issue of abuse of process. He complains that there was no substantial evidence that harming Bob Cook was the primary purpose of the action, as our cases require. We have adopted section 682 of the Restatement (Second) of Torts (1977), which provides:

> One who uses a legal process, whether criminal or civil, against another *primarily* to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

(Emphasis added.)

Comment *b* to section 682 provides this explanation:

> *"Primarily."* The significance of this word is that there is no action for abuse

of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm; nor does the instigation of justified bankruptcy proceedings become abuse of process merely because the instigator hopes to derive benefit from the closing down of the business of a competitor.

For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

Cook and Webster produced evidence that Pundzak had told witnesses that Pundzak was going to "nickel and dime Bob Cook to death" and "bleed Bob Cook." There is also evidence that Pundzak stood to benefit from media coverage of the litigation involving Willard & Rafert.

The court instructed the jury that a party has a privilege to use a legal process for a legitimate purpose (Instruction No. 21) and that a party must commit some act in the use of the process that was not proper in the regular prosecution of a legitimate lawsuit (Instruction No. 22). The jury was also instructed on the definition of abuse of process (Instruction 19), which requires that the legal process be used against another *primarily* to accomplish a purpose for which it was not designed. The jury was also instructed as to the meaning of "primarily" under our cases and the court's instructions. The jury found that Pundzak was guilty of abuse of process and awarded Cook and Webster damages of $1.

We believe that the jury was properly instructed on the abuse-of-process theory. Despite the claim by Pundzak that harming Bob Cook was not shown to be a "primary"

purpose of Pundzak's actions, the jury apparently concluded otherwise.

### V. *Ownership Rights in Willard & Rafert.*

Prior to trial, the parties agreed that the declaratory judgment on the ownership rights in Willard & Rafert was not to be submitted to the jury but should be resolved by the court, after the jury's verdict, without further evidence. That is what was done.

Cook and Webster's cross-appeal asserts that the district court erred in ruling that Pundzak was entitled to a continuing twenty-five percent share of all of the rights in Willard & Rafert, especially in view of the jury's finding that Pundzak had no partnership right in Willard & Rafert.

The parties disagree about the scope of review, but the declaratory judgment action was tried at law, and our review is therefore on error. If there is substantial evidence to support the court's findings, we will affirm.

Trademarks are signs or symbols used to identify goods (referred to as trademarks) or services (referred to as service marks). Under our law, trademark rights do not have to be registered in order to be recognized. Iowa has recognized common-law rights in trademarks for many years. *See Shaver v. Shaver*, 54 Iowa 208, 209, 6 N.W. 188 (1880).

In the present case, Cook and Webster claim both the common-law right and the registration rights under Iowa Code chapter 548 in Willard & Rafert. They claim that common-law rights are involved with regard to the trademark "Willard & Rafert" as used on goods such as record albums, T-shirts, and promotional materials. They also claim the common-law service mark of "Willard & Rafert" for entertainment and advertising services.

The ownership of a mark is in "the legal entity who is in fact using the mark as a symbol of origin." 1 J. McCarthy, *Trademarks and Unfair Competition* § 16:13, at 747 (2d ed. 1984).

Cook and Webster claim that they not only conceived Willard & Rafert, but they are the "users" of the mark for ownership purposes because they performed as Willard & Rafert. While "users" might also include clients for whom the commercials are performed, such use is permissive only, they claim. Further, any use by Pundzak on behalf of Cook and Webster would be only that as used in connection with his performance under the agency agreement.

Pundzak was authorized by the parties' agreement to seek work for Cook and Webster, but this did not give him an ownership right through an independent "use" of the mark. There was no evidence that Pundzak created the "persona" of Willard & Rafert, although he provided suggestions on ways to capitalize on it.

The nature of the relative ownership rights in Willard & Rafert, we believe, is well summarized in the agreement itself, which provided in part that "Cook and Webster are individuals who have developed media characters known as 'Willard & Rafert.' " There was evidence that Cook and Webster were given ideas for commercials and "ran with" them. There was no evidence that Pundzak was the "user" of the Willard & Rafert format as required for ownership, only that as specifically authorized under the parties' agency agreement.

All of the intellectual property, which embodied the Willard & Rafert concept, was fixed in a tangible medium, sound tapes. As such, they became subject to the copyright laws. 17 U.S.C. § 101. All of the subject matter is copyrightable. 17 U.S.C. § 102. Under § 102, the initial ownership of a copyright in works protected under the federal act is in the author of the work. 17 U.S.C. § 201. The evidence is clear in this case that the authors of the work were Cook and Webster, not Pundzak.

We conclude there was no substantial evidence to support the district court's conclusion that Pundzak should be a twenty-five percent owner of the Willard & Rafert rights, and we therefore reverse on the declaratory judgment.

## VI. *Attorney Fees on Abuse-of-Process Claim.*

Cook and Webster argue that the court erred in denying their claim for attorney fees in excess of $77,000 in connection with the abuse-of-process claim. Pundzak responds that they failed to preserve error on the matter and therefore have waived it. They further argue that, even if the issue had been properly preserved, there would be no way for the jury to determine how much of the attorney fees were incurred on the abuse-of-process claim and how much were incurred on the other claims and defenses in the case.

We agree that attorney fees were properly denied, even if we assume there was adequate preservation of the issue, because it would require the jury to speculate as to what fees were attributed to the abuse-of-process claim.

## VII. *Personal Liability of Pundzak.*

Cook and Webster complain that the court erred in not entering a judgment against Pundzak personally as well as against the corporation on their breach-of-contract claim. Pundzak claims first that Cook and Webster waived this argument: When Pundzak moved for a directed verdict on the contract claim as against him personally, Cook and Webster did not respond. The court sustained the motion and submitted the contract claim only as against Pundzak, Inc. The verdict forms submitted by the court clearly show that Cook and Webster's contract claims were submitted only against Pundzak, Inc., and no objection was made to the instructions.

At a later time, Cook and Webster raised the theory that the corporation was the "alter ego" of Pundzak. However, they had not requested an instruction on this theory, nor did they object to the court's failure to instruct on it. We find no error in refusing to enter judgment against Pundzak personally on the breach-of-contract verdict.

## VIII. *Summary.*

In summary, we conclude (1) we have jurisdiction of this appeal; (2) there was

adequate legal and factual support for Cook and Webster's breach-of-contract theory; (3) the court properly allowed recovery against Pundzak for the difference in income to Cook and Webster, on the Allied account, between the 60/40% split and the 75/25% split; (4) the recovery of $37,200 on the Allied account was duplicative of the overall verdict for loss of income; (5) the $7050 talent fee verdict against Pundzak was duplicative of the settlement obtained from Allied; (6) there was sufficient evidence to submit abuse of process; (7) the court did not err in denying attorney fees to Cook and Webster on their abuse-of-process claim; (8) the court did not err in refusing to enter judgment against Pundzak personally; and (9) the court erred in decreeing Pundzak to be a twenty-five percent owner of Willard & Rafert.

Accordingly, we affirm in part and reverse in part on the appeal and on the cross-appeal. We remand for entry of a judgment in accordance with this opinion.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS–APPEAL; REMANDED WITH INSTRUCTIONS.**