# IN THE COURT OF APPEALS OF IOWA

No. 15-0909
Filed August 31, 2016

IN RE THE MARRIAGE OF DONNETTA RAE MCWILLIAMS
AND AARON JAMES CAPALITE

Upon the Petition of
**DONNETTA RAE MCWILLIAMS,**
**a/k/a DONNETTA RAE CAPALITE,**
        Petitioner-Appellant/Cross-Appellee,

And Concerning
**AARON JAMES CAPALITE,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Kathleen A.

Kilnoski, Judge.


        The parties appeal and cross-appeal the district court finding of a

common-law marriage, division of property, award of alimony, and attorney fees.

**AFFIRMED ON BOTH APPEALS.**


        Michael J. Winter, Council Bluffs, for appellant.

        P. Shawn McCann of McGinn, McGinn, Springer & Noethe, Council Bluffs,

for appellee.


        Considered by Potterfield, P.J., Mullins, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BLANE, Senior Judge.**

Aaron Capalite and Donnetta McWilliams began a romantic relationship sometime between 1989 and 1991. Aaron was about nineteen years of age; Donnetta was about twenty-four. The parties never entered into a statutory marriage. On June 12, 2013, Donnetta filed a petition for dissolution of marriage asserting a common-law marriage. Aaron then filed a petition for declaratory judgment and motion to dismiss the dissolution action, contesting the existence of the common-law marriage. The trial court bifurcated the proceeding to first address whether a common-law marriage existed. In April 2014, after an evidentiary hearing, the district court ruled the parties were married by common law. The dissolution petition then proceeded to trial in February 2015. Following trial, the marriage was dissolved, Donnetta was awarded a portion of Aaron's pension, Donnetta was awarded $1500 per month in alimony[1] beginning May 1, 2015 and continuing until either party died or Donnetta remarried, and Aaron was ordered to contribute $2000 to Donnetta's attorney fees.

Both parties appeal. Donnetta contends Aaron failed to appeal timely the determination the parties were in a common-law marriage. She further contends the alimony award is too low and requests $4000 per month in alimony. She also contends the district court erred in denying her request for $6000 in attorney fees and requests appellate attorney fees of a "reasonable" amount. Aaron argues his appeal of the common-law-marriage determination was timely, the parties did not have a common-law marriage, he should not be required to pay any alimony

---

[1] The trial court originally awarded traditional alimony in the amount of $1000 per month, but on post-trial motion, the court increased the amount to $1500 per month.

(or, in the alternative, $500 per month is an appropriate award), common-law marriage should be abolished in Iowa, and Donnetta should not be awarded any attorney fees at either the trial or appellate level.

We review equity actions such as this de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's factual findings, but we are not bound by them. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483 (Iowa 2012). "Although we decide the issues raised on appeal anew, we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses." *In re Marriage of Witten,* 672 N.W.2d 768, 778 (Iowa 2003). We note in this case that the trial court did not find Aaron to be a credible witness.

***Timeliness of Aaron's Appeal.*** In February 2014, Aaron appeared in this case and filed a verified petition for declaratory judgment and preanswer motion to dismiss, contending the parties were not married. The court bifurcated the action and held a hearing on the question of the existence of the marriage. The order ruling the parties were married by common law was filed on May 21, 2014, after which Aaron filed a timely motion to amend or enlarge the findings. That motion was denied.

The district court's final order dissolving the marriage issued on March 24, 2015. Donnetta and Aaron both filed motions to amend or enlarge the court's findings pursuant to Iowa Rule of Civil Procedure 1.904(2). A ruling on those motions followed on April 21. Donnetta filed her timely notice of appeal on May 20. *See* Iowa R. App. P. 6.101(1)(b). Aaron filed his notice of cross-appeal on

May 28. *See* Iowa R. App. P. 6.101(2)(b) (allowing ten days from filing of notice of appeal to file notice of cross-appeal).

Donnetta argues Aaron's appeal is not timely because he did not appeal following the May 2014 order; he argues his appeal is timely. We agree with Aaron. Appeals may be taken from final orders or judgments. *See* Iowa R. App. P. 6.101(1)(b). "A judgment is not final unless the rights of the parties have been fully determined." *Pundzak, Inc. v. Cook*, 500 N.W.2d 424, 426 (Iowa 1993). "When the actions are bifurcated, an appeal is timely if it is from the judgment that finally determines the rights of the parties, a rule necessary to prevent piecemeal appeals." *Id.* Here, the action was bifurcated, and Aaron's cross-appeal is timely with respect to the final judgment issued on March 24, 2015, and Donnetta's own appeal filed on May 20, 2015. *See* Iowa R. App. P. 6.101(2)(b).

***Existence of Marriage.*** Donnetta claims a common-law marriage existed between the parties; Aaron claims one did not. As an initial matter, assuming Aaron preserved error on this question, we decline Aaron's invitation to abolish common-law marriage in Iowa. "We are not at liberty to overturn Iowa Supreme Court precedent." *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). Our review is de novo. *In re Marriage of Martin*, 681 N.W.2d 612, 616 (Iowa 2004). Claims of common-law marriage are scrutinized carefully and the burden of proof rests with the party asserting the claim. *Id.* Three elements must exist for us to find a common-law marriage: "(1) [present] intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife." *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979) (Winegard II).

To satisfy the first element, an express agreement is not required; rather, the element may be satisfied by an implied agreement where one party intends present marriage and the conduct of the other party reflects that intent. *See In re Marriage of Winegard*, 257 N.W.2d 609, 616 (Iowa 1977) (Winegard I). However, the element is not satisfied where the parties merely intend to be married at some future time. *See State v. Grimes*, 247 N.W. 664, 665 (Iowa 1933).

Continuous cohabitation is circumstantial evidence of a common-law marriage that by itself cannot establish a common-law marriage. *Conklin by Johnson-Conklin v. MacMillan Oil Co.*, 557 N.W.2d 102, 105 (Iowa Ct. App. 1996). The cohabitation must be tied to the present intent and agreement to be married. *See In re Estate of Wittick*, 145 N.W. 913, 916 (Iowa 1914).

"The public declaration or holding out to the public is considered to be the acid test" of a common-law marriage. *Martin*, 681 N.W.2d at 618. There can be no "secret" common-law marriage. *Id.* But this element does not require perfect consistency; "[a] substantial holding out to the public in general is sufficient." *Id.*

As one might expect, the positions of the parties differ. There is evidence supporting both parties' contentions. Militating in favor of a marriage, there is evidence Aaron introduced Donnetta as his "wife" to others, and when Donnetta introduced Aaron to others as her "husband," he did not repudiate it. There is evidence Aaron and Donnetta signed as many as seven statements similar to marriage vows over the years setting forth their intent to be married. The last two of these were admitted as exhibits. Donnetta testified that, although she does not regularly file income tax returns due to a disability and lack of income, Aaron

told her he had filed returns indicating she was his wife. There was evidence Aaron continued to receive mail at Donnetta's home.

It is clear the parties lived together for some time, but the evidence on cohabitation is mixed. According to Donnetta, the parties met in 1989 and lived together from 1989 to at least 1991. From 1993 to 1994, Aaron was in prison in Nebraska, but upon his release, Donnetta testified they lived together until their separation in early 2013. While Aaron traveled out-of-state for work, she would often go visit him at job sites.

According to Aaron, the parties began living together in 1991. He was in prison from approximately 1991 to 1993, and following his release he lived with his father in Nebraska as a condition of his parole. That lasted for four years, before he moved in with Donnetta for a year, and then purchased a home for himself in 1998 in Omaha, Nebraska. He traveled for work frequently, and when home, he would stay in his home, but would at times stay at Donnetta's apartment. From another perspective, a family friend testified he lived with Aaron, Donnetta, and her son Dickey for a significant period of time between 1998 and 2003.

There is evidence weighing against marriage as well. Aaron contends he was coerced into signing the vows when Donnetta would threaten to call his employer with unbecoming information about him if he did not sign. The parties separated at one time and each dated other people; Aaron characterized their relationship as on-again, off-again. Aaron purchased real estate in Omaha. Donnetta primarily used the surname McWilliams. The parties did not wear wedding rings. They did not own property together. They had separate bank

accounts. Donnetta obtained public assistance in the form of rent subsidy and food stamps, for which she would not have qualified if Aaron's income as a spouse had been claimed, but testified she disclosed their common law marriage.

Upon our de novo review, we conclude Donnetta has established the existence of a common-law marriage between the two parties. The bulk of the credible evidence is that Donnetta intended to be married. Aaron's conduct reflected that intent. For those reasons, we find the first element satisfied. The parties cohabited together continuously for many years. Although it is clear Aaron traveled for work extensively, the evidence also supports a finding that he would return to Donnetta when not away for work. Given the nature of his career, this amounts to continuous cohabitation with Donnetta. Finally, we find the two held themselves out publicly as married. This "acid test" of a common-law marriage has been met.

*Alimony.* Donnetta was initially awarded $1000 per month in alimony until either party's death or her remarriage. After post-trial motions, that was increased to $1500. On appeal, she requests the amount be increased to $4000 per month because of her financial need and Aaron's relative ability to pay. Aaron contends he did not support Donnetta during their relationship and therefore should not be required to do so now. He argues that if we decide alimony is appropriate, $1500 per month is inequitable, and the amount should be reduced to $500 per month.

There are three forms of spousal support: reimbursement, rehabilitative, and traditional. *See In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008).

This case involves traditional alimony, which "is usually payable for life or for so long as the dependent is incapable of self-support." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997). Duration of the marriage is an important factor in awarding traditional alimony. *In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015). Generally speaking, marriages of twenty years "commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 411. We look primarily to "need and ability" when considering a traditional alimony award. *Id.*

The parties' relationship is of sufficient length to merit the imposition of traditional alimony. The credible testimony is that the relationship began no later than 1991, twenty-two years before the parties' separation. The district court found the parties' marriage began in 1995, which would mean the marriage falls short of the twenty-year guideline, but not so short as to negate any possibility of an alimony award. *See, e.g.*, *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993) (awarding alimony following marriage of "nearly nineteen years").

We next consider the needs and abilities of the parties. Donnetta receives $721 per month in disability benefits stemming from narcolepsy. She provided evidence she receives housing assistance and food assistance, both of which she claims will cease upon receipt of alimony. Her current estimate of her living expenses is $1254 per month; the purported increase to her expenses upon the loss of rental and food assistance would be approximately $460 per month. Aaron is employed. His average gross income from 2010 to 2013 was $119,720. That appears to be a reliable estimate of his current wages.

Upon our review, we believe the trial court's award of $1500 per month does equity, and we will not disturb it. *See In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005). "This deference to the trial court's determination is decidedly in the public interest. When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize." *Gust*, 858 N.W.2d at 407.

**Attorney fees.** Donnetta's attorney fees at the trial level were $6000. She sold a marital asset—a trailer—to pay $3000 of that amount. Aaron was ordered to pay $2000 of Donnetta's attorney fees. We review an award of attorney fees at the trial level for an abuse of discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). From our review of the record, we cannot say the court abused its discretion.

Donnetta also requests appellate attorney fees of a "reasonable" amount. The decision to award appellate fees rests in the appellate court's discretion. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* After carefully considering these factors, we decline to award Donnetta appellate fees in this appeal.

**Conclusion.** For the foregoing reasons, the judgment of the district court is affirmed on both appeals.

**AFFIRMED ON BOTH APPEALS.**