COMMERCIAL SAVINGS
BANK, Appellant,

v.

HAWKEYE FEDERAL SAVINGS
BANK, Defendant,

and

Commercial Federal Bank, Appellee.

No. 97–771.

Supreme Court of Iowa.

March 24, 1999.

Rehearing Denied April 16, 1999.

Michael G. Voorhees and Jeffrey D. Harty of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, for appellant.

Bruce D. Vosburg, William Jay Riley and Michael J. Leahy of Fitzgerald, Schorr, Barmettler & Brennan, P.C., Omaha, Nebraska, and James R. Van Dyke and John C. Werden, Jr., of Van Dyke & Werden, P.C., Carroll, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and CADY, JJ.

McGIVERIN, Chief Justice.

Plaintiff, Commercial Savings Bank, appeals from a district court ruling denying its request for injunctive and declaratory relief concerning its common-law trademark infringement claim. In the district court,

Commercial Savings Bank asserted that it had a trademark in the name COMMERCIAL and its variants, and thus had the right to enjoin defendant Commercial Federal Bank from using the name COMMERCIAL in its business name in plaintiff's eight-county trade area.

The district court denied Commercial Savings' request for injunctive relief. We affirm.

## I. Background facts and proceedings.

This is a suit by plaintiff, Commercial Savings Bank (Commercial Savings), an Iowa bank with its main office in Carroll, Iowa, against another Carroll, Iowa, bank, Commercial Federal Bank. The obvious similarity in the names of the banks is the basis for the litigation.

### A. Commercial Savings' mark.

Commercial Savings, with its main office in Carroll, Iowa, also has branch offices in Lanesboro and Dedham, all located in Carroll County. Since its beginning in 1917, Commercial Savings has operated as a bank under its chartered name "Commercial Savings Bank."

Commercial Savings is engaged in the banking business and sells banking products and services to its customers in the Iowa counties of Carroll, Crawford, Greene, Sac, Calhoun, Audubon, Shelby, and Guthrie. These products and services are marketed under the trade name and service mark COMMERCIAL SAVINGS BANK and also under service marks COMMERCIAL SAVINGS, COMMERCIAL BANK and COMMERCIAL (hereinafter collectively referred to as COMMERCIAL). Commercial Savings has never owned a trademark registered with a government body for any of those business names.[1]

Commercial Savings' use of the foregoing COMMERCIAL marks in the eight-county area served by Commercial Savings was exclusive until 1991. At that time, Commercial Federal Mortgage Corporation, a subsidiary of defendant Commercial Federal Bank, began providing home mortgage loans throughout the state of Iowa, including in the eight-county region where Commercial Savings does business.

### B. Commercial Federal's mark.

Defendant Commercial Federal Bank began business in 1887 in Omaha, Nebraska. Since that time, Commercial Federal has been providing banking services in Omaha and surrounding communities, including cities in western Iowa.

In 1972, Commercial Federal changed its name from Commercial Savings & Loan Association to Commercial Federal Savings & Loan and received a federal charter to that effect. In 1990, the name was changed again to its current form, Commercial Federal Bank.

In 1987, Commercial Federal obtained a registration from the United States Trademark Office for the mark COMMERCIAL FEDERAL which it began using in 1972. Subsequently, in 1994, Commercial Federal obtained federal registration of the "CF" logo, which has been used at all times since then by Commercial Federal in its advertising, brochures, and signs in conjunction with the name "Commercial Federal Bank" or the mark "Commercial Federal."

In August 1995, Commercial Federal merged with Conservative Savings Bank, including its branch office in Harlan, Iowa, in Shelby County. As a result, Conservative Savings Bank ceased to exist and the Harlan branch name was changed to Commercial Federal Bank. Commercial Federal then began competing with plaintiff Commercial Savings for customers in Carroll County, as

---

1. Commercial Savings' trademark infringement claim is therefore not based on the existence of a registered trademark under state law, *see* Iowa Code section 548.113 (1995), or under federal law, *see* 15 U.S.C. § 1115(a) (1994) ("registration ... of a mark registered ... and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity

of the registered mark"). Iowa Code chapter 548 sets forth the requirements in Iowa concerning registration of trademarks with the secretary of state. Iowa Code section 548.116 states that nothing in chapter 548 "affect[s] the rights or the enforcement of rights in marks acquired in good faith at any time at common law."

well as in Shelby, Audubon, and Crawford counties.

On October 1, 1996, Commercial Federal merged with defendant Hawkeye Federal Savings Bank, which had its main office in Boone, Iowa, with branch offices in Carroll, Manning, Lake City, Madrid, and Ogden, Iowa. As a result of the merger, Hawkeye Federal Savings Bank ceased to exist and the names of all its branch banks were changed to Commercial Federal Bank. Commercial Federal Bank currently operates banks in Harlan, Carroll, Boone, Lake City, Manning, Madrid, and Ogden, Iowa, in plaintiff's eight-county trade area.

### C. The present dispute.

Plaintiff Commercial Savings filed a petition against defendant Hawkeye Federal Savings/Commercial Federal Bank on August 26, 1996, asserting claims for common-law trademark infringement, unfair competition, and injury to business reputation-dilution under Iowa Code section 548.113 (1995), and seeking declaratory relief concerning those claims. At the same time, Commercial Savings sought temporary and permanent injunctions to enjoin Hawkeye Savings Bank/Commercial Federal from using the mark COMMERCIAL, whether alone or in combination with other words or symbols, in connection with its banking products or services.

An evidentiary hearing concerning Commercial Savings' petition for temporary injunction was held on October 31, 1996. Patrick Moehn, president of Commercial Savings, testified concerning the bank's history. Moehn stated that a member of his family had served as bank president since 1923. Moehn also explained that the bank survived the bank crisis during the Great Depression and as a result had developed a solid reputation in the community. Moehn further testified that Commercial Savings is generally referred to by people in Carroll County and surrounding counties as "Commercial Savings," "Commercial Bank," and "Commercial."

Thomas Gronstal, president of the Carroll County State Bank in Carroll, Iowa, former mayor and lifetime resident of Carroll, also testified that residents of Carroll county frequently refer to Commercial Savings as "Commercial Savings" and "Commercial" and have done so as long as he can remember.

Copies of Commercial Savings' past newspaper ads and radio "spots" over the past eleven years were introduced into evidence. Most of these ads refer to plaintiff bank as "Commercial Savings Bank" or "Commercial Bank," rather than just the name "Commercial" alone.

Commercial Savings also presented evidence concerning alleged confusion generated by Commercial Federal's use of the word "Commercial" in its name. On July 11, 1996, Commercial Savings received a letter addressed to "Commercial Federal Savings Bank" from American Family Insurance. On August 6, 1996, Commercial Savings received a letter addressed to "Commercial Federal Savings" from an apartment complex in Carroll. Both letters were intended for plaintiff Commercial Savings and bore Commercial Savings' correct address, but the senders in each case added the name Federal to the address.

Employees of Commercial Savings also reported receiving telephone calls on September 23 and October 9 from unidentified individuals who stated in substance that they had called the wrong bank.

On October 11, Commercial Savings discovered that it had received an automobile title from the Carroll County Treasurer's Office that should have been sent to Commercial Federal.

In another example, on or about October 15, a Commercial Savings customer came into plaintiff's bank and asked an employee to explain the rates that were advertised in a local newspaper. The employee explained that the advertisement was for defendant Commercial Federal, not plaintiff. The customer stated that he only remembered seeing the word COMMERCIAL in the ad.

Commercial Savings reported receiving a telephone call on October 17 from a woman complaining about charges to her account. The caller eventually realized that her ac-

count was at Commercial Federal, not Commercial Savings, and thus had called the wrong bank.

On October 18, Commercial Savings received two letters addressed to Commercial Federal and bearing Commercial Federal's address. This was apparently an error on the part of the post office concerning misdelivered mail. On October 18 and October 29, Commercial Savings received insurance policies that incorrectly listed Commercial Savings as the loss payee. The proper loss payee was Commercial Federal and thus the policies should have been sent to Commercial Federal.

On or about October 21, the Carroll County State Bank incorrectly routed a check written on a Commercial Federal account to Commercial Savings for payment. Also in October, an automatic payroll deposit from the Pella Corporation in Carroll was incorrectly directed to Commercial Savings instead of to Commercial Federal.

Based upon this evidence, the district court denied plaintiff Commercial Savings' request for a temporary injunction on December 19, 1996. The court determined that although Commercial Savings used the term COMMERCIAL in connection with banking services prior to Commercial Federal's registration of its trademark in 1987, the name COMMERCIAL was rarely used alone. The court thus concluded that Commercial Savings failed to show the existence of a common law trademark.

Additionally, the court found that the name COMMERCIAL was a generic and descriptive term and that plaintiff failed to prove that it had established a secondary meaning with respect to the name COMMERCIAL such that a customer would identify that name with plaintiff as the provider of certain banking services. Finally, the court concluded that any evidence of actual confusion involving the two banks was "minimal at best" and that such confusion appeared to be reasonably manageable.

Following entry of this ruling denying a temporary injunction to plaintiff, the parties agreed that the court's December 19, 1996 ruling should in substance be entered as the final judgment. Additionally, plaintiff dismissed all claims against defendant Hawkeye Federal Savings Bank and all claims against both defendants relating to injury to business reputation-dilution. After entry of final judgment on April 2, 1997, plaintiff appealed.

## II. Standard of review.

Our standard of review in equity cases is de novo. Iowa R.App. P. 4. In such cases, we examine the entire record and adjudicate anew rights on issues properly before us. *See Ide v. Farm Bureau Mut. Ins. Co.*, 545 N.W.2d 853, 856 (Iowa 1996). In doing so, we give weight to the trial court's factual findings, especially when considering the credibility of witnesses, although we are not bound by them. Iowa R.App. P. 14(f)(7).

## III. Common law trademarks.

Plaintiff Commercial Savings asserts that the district court erred in concluding that the name COMMERCIAL, when used either alone or in combination with other words or symbols in connection with its banking products and services, does not constitute a common-law trademark for plaintiff.

### A. Background law concerning trademarks.

To succeed on a common-law trademark infringement claim and to obtain injunctive relief, a plaintiff must prove (1) that it has a *valid trademark* or a protectable proprietary right in the name it seeks to exclude others from using, and (2) that there has been *infringement* of that right. *See Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 652 So.2d 1306, 1309 (La.1995).

"Trademarks are signs or symbols *used to identify goods* (referred to as trademarks) or services (referred to as service marks)." *Pundzak, Inc. v. Cook*, 500 N.W.2d 424, 430 (Iowa 1993) (emphasis added); *see also Iowa Auto Market v. Auto Market & Exchange*, 197 Iowa 420, 422, 197 N.W. 321, 322 (1924); Restatement (Third) of Unfair Competition § 9 (1995) [hereinafter Restatement] (defining a trademark as "a word, name, symbol, device, or other designation, ... that is distinctive of a person's goods or

services and that is used in a manner that identifies those goods or services and distinguishes them from the goods or services of others").

■ We recognized long ago that trademarks are a form of common-law property right. *See Pundzak*, 500 N.W.2d at 430. Registration of trademarks is therefore not a prerequisite to protection from infringement. *See id.; see also* William C. Holmes, *1 Intellectual Property & Antitrust Law* § 3.02, at 3–4 (1998) [hereinafter Holmes] ("Acquiring ownership of a trademark requires no governmental action whatsoever, but is instead accomplished through the physical act of using the mark in trade to identify a product or service as coming from a particular source.").

■ "Trademarks perform the important economic function of identifying the products of one business and distinguishing them from those of its competitors." Holmes, § 3.01, at 3–3. Trademark infringement is considered a form of unfair competition because the similarity in the marks could lead a prospective buyer to believe that defendant's goods are those of the plaintiff. *See* Rudolf Callmann, 3A *The Law of Unfair Competition, Trademarks & Monopolies* § 20.02, at 9 (4th ed.1988) [hereinafter Callmann]. Thus, potential customers may be attracted to the reputation and name built up by the first user. *Id.* § 20.12, at 80. The danger is not that the sophisticated buyer will actually purchase from the defendant/second user believing that he has purchased from plaintiff/first user, but rather that the purchaser will be misled into an *initial* interest in defendant based on a mistaken belief as to a potential interrelationship between the two businesses. *Id.* § 20.03, at 12. In such cases, a defendant should not be permitted to benefit or trade upon any misleading suggestion of a relationship with the plaintiff's business or products. *Id.* § 20.04, at 20. Thus, a plaintiff's market share may be diminished where the purchaser stops buying plaintiff's product

because it is dissatisfied with defendant's product and believes there to be some connection between plaintiff and defendant. *Id.* § 20.04, at 18. The justification for an injunction is that the plaintiff, as owner of the infringed trademark, is entitled to insist that *its reputation shall be of its own making alone* and that quality of its products or services lies within its exclusive control. *Id.* § 20.04, at 21. Thus, " '[w]hat is infringed is the right of the public to be free of confusion and the synonymous right of a trademark owner to control [its] product's reputation.' " *Phipps Bros. v. Nelson's Oil & Gas*, 508 N.W.2d 885, 886 (S.D.1993) (quoting *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir.1976)).

**B. Analytical framework: whether a common-law trademark exists.**

■ As noted above, a trademark is a sign or symbol used to identify goods. *See Pundzak*, 500 N.W.2d at 430. Thus, to meet the first requirement in a common-law trademark infringement claim—the existence of a valid common-law trademark—the plaintiff must prove that there has been *use* of a name or designation that is sufficiently *distinctive* such that consumers (i.e., customers and potential customers) identify the mark with the goods or services provided by the claimant. *See First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044–45 (8th Cir. 1996).

Use of a name or designation is not usually difficult to show. The more complicated question concerns whether the name or designation is sufficiently distinctive of the plaintiff's goods or services such that it deserves protection against use or infringement by another.

■ In terms of analysis, courts determine whether an alleged trademark is sufficiently distinctive by classifying it into one of four categories: (1) generic;[2] (2) descriptive; (3) suggestive;[3] or (4) arbitrary or fanciful.[4]

---

**2.** Section 15(1) of the Restatement defines a generic designation as one that describes the general category, type, or class of goods, services or business. A generic term is not entitled to protection. *See First Bank,* 84 F.3d at 1045. Examples of generic terms include "camera" as a type of good, "computer programming" for a type of

service, and "bank" for a type of business. *See* Restatement § 15 cmt. a.

**3.** A suggestive designation is one that is suggestive of the nature or characteristics of the product or business without being clearly descriptive,

*See id.* at 1045; *accord Duluth News–Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir.1996).

 Here, the parties seem to agree that the name COMMERCIAL is descriptive. A descriptive designation is one that is "merely descriptive of the nature, qualities, or other characteristics of the goods, services, or business with which it is used." Restatement § 14. Thus, words describing the purpose or function of a product, the effect of its use, or the class of intended purchasers is considered to be descriptive in nature. *See* Restatement § 14 cmt. a.

In prior cases, we have stated that words which are generic or which are merely descriptive of the goods or business to which they apply are not inherently distinctive and will not be protected as a trademark or trade name. *See Iowa Auto Market*, 197 Iowa at 422, 197 N.W. at 322–23. We have likewise noted, however, that terms which may be considered "descriptive" in nature "may, by long use in connection with the goods or business of a particular dealer, come to be understood in a *secondary sense* as designating the goods or business of such dealer, and in such cases their deceptive use by another will be restrained as unfair competition." *Id.* at 423, 197 N.W. at 323 (concluding that the words "Auto Market" in business name were too generic to constitute a trademark or trade name so as to justify enjoining defendant from using those words in its business name); Restatement § 13(b). We have explained:

> To have this protection, the party complaining must show that, by continued use, the secondary meaning has become established in the public mind, and that his

goods have become known and recognized by the public under the name, device, or symbol, with its secondary meaning. The secondary meaning only comes from use. Before the courts will afford protection in its use, it must be shown, that, as to the party complaining, it has a secondary meaning in the public mind; that it designates and is understood to represent the goods of the party complaining, so that one appropriating it and using it, after such meaning had attached, would be in a position to practice a fraud upon the complainant and upon the public.

*Motor Accessories Mfg. Co. v. Marshalltown Motor Material Mfg. Co.*, 167 Iowa 202, 208–09, 149 N.W. 184, 187 (1914).[5]

 The Restatement has adopted principles similar to our statements in *Iowa Auto Market and Motor Accessories* concerning a trademark's secondary meaning. *See* Restatement § 13(b). Specifically, the Restatement rule provides that descriptive terms are not inherently distinctive and are only protectable where secondary meaning is shown. *See id.* § 13 cmt. a.

 "The person claiming rights in a mark or name bears the burden of proving that the designation is inherently distinctive or that it has become distinctive by acquiring secondary meaning." *Id.* Acquired distinctiveness, or secondary meaning, exists when the relevant consuming public has come to recognize the designation as one that identifies the business. *See id.* § 13(b). Said another way, secondary meaning simply refers to the connection in the consumer's mind between the mark and the provider of the

---

such as HERCULES for girders. *See* Restatement § 13 cmt. c., illus. 3. Suggestive marks or names need not acquire secondary meaning to be protected. *See Gulf Coast Bank*, 652 So.2d at 1314.

4. A fanciful designation is a term having no meaning other than identifying the source. *See* Restatement § 13 cmt. c. An example of a fanciful designation is the word EXXON. *See id.* § 14 cmt. a. An arbitrary designation, such as the trademark SHELL for petroleum products, is an existing word whose dictionary meaning has no apparent application to the particular product or service. *See id.* § 13 cmt. c. Arbitrary or fanciful

marks are considered inherently distinctive and are accorded protection without having to prove secondary meaning. *See id.; First Bank*, 84 F.3d at 1045.

5. Although *Motor Accessories* involved a claim based on unfair competition, not a common-law trademark infringement claim, *see* 167 Iowa at 206–07, 149 N.W. at 186 ("The disposition of this case does not involve the question of trade-names or trademarks, nor the rights which obtain to patented articles."), we believe the above-quoted statements are likewise applicable to a trademark claim.

service. *See Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1525 (11th Cir.1991).

■ Secondary meaning can be established through direct evidence, such as consumer surveys and customer testimony, or through circumstantial evidence, such as evidence of exclusivity of use, length and manner of the designation's use, amount and manner of advertising, amount of sales, market share, and number of customers. *See Madison Reprographics v. Cook's Reprographics*, 203 Wis.2d 226, 552 N.W.2d 440, 445 (Ct.App.1996); Restatement § 13 cmt. e.

### C. Analysis.

■ Upon our review, we disagree with the district court's finding that plaintiff Commercial Savings has not acquired distinctiveness with respect to the name COMMERCIAL through secondary meaning. Commercial Savings has operated under the name COMMERCIAL SAVINGS BANK since 1917 and did so exclusively under that mark until 1991. No other bank in the eight-county area operated under that name during that time. Plaintiff has used the marks COMMERCIAL, COMMERCIAL BANK, and COMMERCIAL SAVINGS BANK in many forms of advertising and promotional activities, including newspapers, brochures, signs and radios ads.

The evidence also shows that plaintiff's president, Patrick Moehn, a long time resident of Carroll County, testified that Carroll County residents refer to plaintiff as COMMERCIAL, COMMERCIAL SAVINGS, and COMMERCIAL BANK. Thomas Gronstal, president of the Carroll County State Bank and longtime resident of Carroll, also testified that people in the community generally refer to plaintiff as COMMERCIAL or COMMERCIAL SAVINGS. This evidence causes us to find that consumers in the eight-county area have come to associate the name COMMERCIAL with banking goods and services provided by plaintiff. *Cf. First Federal, Council Bluffs v. First Federal Sav. & Loan Assoc. of Lincoln*, 929 F.2d 382, 384

(8th Cir.1991) (plaintiff First Federal Council Bluffs had developed secondary meaning in name FIRST FEDERAL through exclusive use of that name for twenty-five years and community involvement and support).

As a whole, the evidence in the record is sufficient to establish a secondary meaning in the name COMMERCIAL, such that consumers in the eight-county area would associate that designation with banking products and services provided by plaintiff. We therefore conclude that plaintiff met its burden of proving it has a protectable common-law property right in the mark COMMERCIAL.

### IV. Has there been infringement of the mark COMMERCIAL?

Having decided that plaintiff has a valid common-law trademark in the mark COMMERCIAL, we next must determine whether the trademark has been infringed by defendant, Commercial Federal Bank.

### A. Background law concerning infringement.

In prior decisions, we stated, "confusion of names in business is sufficient ground for the issuance of an injunction." *Atlas Assur. Co. v. Atlas Ins. Co.*, 138 Iowa 228, 233, 112 N.W. 232, 233 (1907). We have also stated that "an injunction will lie to prevent not only the use by another of the identical name, but the use of a name which, by reason of similarity, will *tend to create confusion and enable* the later user to obtain the business of the first." *Iowa Auto Market*, 197 Iowa at 423, 197 N.W. at 323 (emphasis added).

Courts from other jurisdictions have adopted a similar standard for determining whether a trademark has been infringed— whether there is a *likelihood of confusion* among consumers. *See SquirtCo v. Seven–Up*, 628 F.2d 1086, 1091 (8th Cir.1980); *Phipps Bros.*, 508 N.W.2d at 886; *Madison Reprographics*, 552 N.W.2d at 444–45. This "likelihood of confusion" standard is either based on pertinent language of the Lanham Act, *see* 15 U.S.C. § 1114(1)(b),[6] the federal

---

**6.** Pertinent language of the Lanham Act states that a person who "colorably imitate[s] a registered mark" such that the use is "likely to cause confusion ... shall be liable in a civil action."

law governing trademark infringement claims, or upon language of section 20 of the Restatement (Third) of Unfair Competition.[7]

■ While our prior cases implicitly required a finding that use of a similar business trade name or trademark constitutes infringement when a "likelihood of confusion" exists among consumers, we now follow courts from other jurisdictions and officially adopt the "likelihood of confusion" standard. Thus, once a plaintiff has proved that it has a valid common-law trademark by showing that the name or designation it seeks to protect is distinctive, either inherently so or through secondary meaning, it then must prove that defendant's use of a similar designation will cause a likelihood of confusion among consumers. *See* Restatement (Third) Unfair Competition § 20 cmt. d.

Following this analysis, our next task is to consider whether the district court properly concluded that Commercial Savings failed to prove that Commercial Federal's use of the name COMMERCIAL is likely to cause confusion among consumers concerning the goods, services or business provided by plaintiff and defendant.

### B. Relevant factors.

■ Commercial Savings bears the burden of proving that Commercial Federal's use of the name COMMERCIAL would create a likelihood of confusion, deception, or mistake among an appreciable number of ordinary consumers as to the source of or association between the banks' services. *See First Nat'l Bank, Sioux Falls v. First Nat'l Bank, South Dakota*, 153 F.3d 885, 888 (8th Cir.1998). Courts have established the following factors to be considered in determin-

ing whether there is a likelihood of confusion between two marks:

(1) strength of the trademark;

(2) similarity between the trademark and the defendant's mark;

(3) competitive proximity of the products on which the respective marks are placed;

(4) intent of the alleged infringer to pass off its goods as those of the trademark holder;

(5) incidents of actual confusion; and

(6) degree of care likely to be exercised by potential customers of the trademark holder.

*See Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 399 (8th Cir.1987) (citing *SquirtCo*, 628 F.2d at 1091); *see also* Restatement § 21 (listing similar factors). "[T]he relative weight of the factors depends on the facts of the individual case," *First Nat'l Bank, Sioux Falls*, 153 F.3d at 888, and no single one is dispositive, *First Savings Bank, F.S.B. v. First Bank Sys.*, 101 F.3d 645, 652 (10th Cir.1996). Additionally, "whether the use of a particular designation causes a likelihood of confusion must be evaluated in light of the overall market context in which the designation is used." Restatement § 21 cmt. a.

■ The Restatement explains that "the confusion must threaten the commercial interests of the owner of the mark," *see id.* § 20 cmt. b. In other words, one's use of a similar trademark presents a significant risk to the sales or good will of the trademark owner. *Id.*

### 1. Strength of the COMMERCIAL marks.

■ "The strength of a mark measures the degree of distinctiveness for the

15 U.S.C. § 1114(1)(b); *see also* 15 U.S.C. § 1125(a)(1)(A).

**7.** Section 20 of the Restatement (Third) of Unfair Competition states in pertinent part:

STANDARD OF INFRINGEMENT
(1) One is subject to liability for infringement of another's trademark, trade name, collective mark, or certification mark if the other's use has priority under the rules stated in section 19 and in identifying the actor's business or in marketing the actor's goods or services the

actor uses a designation that causes a *likelihood of confusion:*
(a) that the actor's business is the business of the other or is associated or otherwise connected with the other; or
(b) that the goods or services marketed by the actor are produced, sponsored, certified, or approved by the other; or
(c) that the goods or services marketed by the other are produced, sponsored, certified, or approved by the actor.
. . . .
(Emphasis added.)

purpose of determining the likelihood of confusion resulting from another's use of a similar mark." *Id.* § 21 cmt. i. The more distinctive a mark is, the stronger it is, and the greater the likelihood of confusion and scope of protection. *See Madison Reprographics,* 552 N.W.2d at 446. Thus, fanciful or arbitrary marks, such as the trademark EXXON, are considered "strong" marks because they have a high degree of distinctiveness and are thus protected to a greater extent than are "weak" or descriptive designations that are less distinctive. *See* Restatement § 21 cmt. i. Unlike trademarks that are considered suggestive or arbitrary/fanciful, a descriptive mark is not inherently distinctive and thus is not considered to be a strong mark. *See id.* § 13 cmt. e.

As noted above, we conclude that plaintiff has acquired secondary meaning with respect to the mark COMMERCIAL. While we believe that the name COMMERCIAL is sufficiently distinctive such that consumers in the eight-county area would identify the mark with banking goods and services provided by plaintiff, we do not believe that the mark is so strong or distinctive that defendant's use of the name COMMERCIAL FEDERAL is likely to cause confusion among consumers.

### 2. Similarity between the parties' marks.

Clearly, there is a noticeable similarity in the business names of plaintiff and defendant in that both use the word COMMERCIAL. However, the respective business logos used by the parties are substantially different.

The record suggests that Commercial Savings has developed a strong business reputation since it began business in 1917. We believe that Commercial Savings' strong reputation is a factor that lessens any confusion due to the similarity in the names.

### 3. Competitive proximity of products.

Neither party disputes the fact that both banks provide similar products and services and that they directly compete in the eight-county area. We thus need not further examine this factor.

### 4. Intent to confuse.

The district court found no evidence of intent on the part of Commercial Federal of trying to pass off its services as those of the plaintiff. Commercial Savings does not dispute this finding, but instead argues that intent is not a relevant factor in the analysis, relying on previous decisions by this court. We believe that intent is a relevant factor with respect to the issue of whether defendant's use of a similar mark is likely to cause confusion. We also agree with the district court's finding that there is no evidence of intent or bad faith concerning Commercial Federal's adoption and use of the COMMERCIAL mark.

### 5. Evidence of actual confusion.

■ "[W]hen determining whether there exists a likelihood of confusion, weight is given to the number and extent of instances of actual confusion." *Life Technologies, Inc. v. Gibbco Scientific, Inc.,* 826 F.2d 775, 777 (8th Cir.1987). The test under this factor is "whether any consumers have actually been confused by the products or services bearing the allegedly confusing marks." *See KAT Video v. KKCT-FM Radio,* 584 N.W.2d 844, 848 (N.D.1998) (citations omitted).

Commercial Savings points to the evidence in the record concerning the letters and telephones calls it received as proof of actual confusion. These incidents of confusion, however, must be viewed in context. *See Madison Reprographics,* 552 N.W.2d at 449 (citing 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23.02(2)(a) (3d ed.1996)). First, the majority of mistakes concerning mail and delivery of documents were made by other entities doing business with Commercial Savings, not by actual customers. For the most part, it seems that these mistakes can be attributed to inattentiveness on the part of the caller or sender rather than actual confusion.

We note that the incidents of confusion occurred during, or soon after, the time Commercial Federal assumed operation of Hawkeye Federal which diminishes the significance of the incidents. *See First Nat'l Bank, Sioux Falls,* 153 F.3d at 890 ("Isolated evidence of some actual confusion occurring

initially upon the creation of a potentially confusing mark is not itself sufficient to establish a likelihood of confusion."). We also note that plaintiff presented no additional evidence concerning incidents of actual confusion following the October 31, 1996 hearing and the December 19, 1996 ruling denying a temporary injunction to plaintiff and the entry of the agreed final decree almost four months later. Thus, plaintiff's evidence on this factor can more accurately be characterized as short-lived confusion by non-customers rather than lasting confusion by actual customers. See Safeway Stores Inc. v. Safeway Discount Drugs, 675 F.2d 1160, 1167 (11th Cir.1982) (noting that "kinds of persons confused and degree of confusion" are factors that affect the weight and relevance afforded instances of confusion).

Based on the minimal incidents of actual confusion by customers, we believe the district court properly determined that the similarity in the names is not such that an appreciable number of ordinary purchasers are likely to be misled as to the source of plaintiff's products and services.[8]

### 6. Degree of care reasonably expected of potential customers.

■ In applying this factor, we consider the degree of care expected of a "reasonably prudent purchaser" or "ordinary consumer using ordinary care." See Restatement § 20 cmt. h. "If the goods or services are normally purchased only after considerable attention and inspection, greater similarity between the designations may be permitted than when the goods or services are purchased casually or impulsively." Id. § 21 cmt. h.

Courts have noted that bank customers exercise a greater degree of care than do customers of other businesses. See First

Nat'l Bank, Sioux Falls, 153 F.3d at 889 (noting that bank customers tend to exercise a relatively high degree of care in selecting banking services); Empire Nat'l Bank of Traverse v. Empire of America, 559 F.Supp. 650, 656 (W.D.Mich.1983). We believe that consumers in the eight-county area in which plaintiff does business would use the same degree of care in banking business and would be able to distinguish between the services and products provided by plaintiff and defendant. We do not believe that an ordinary consumer would be misled in banking decisions simply because two banks in the area have similar names. We believe this to be especially true in this case where Commercial Savings has developed a strong reputation concerning its products and services.

### C. Summary.

In summary, we agree with the district court's decision that plaintiff has failed to make the requisite showing of likelihood of confusion between the use of its business names, COMMERCIAL, COMMERCIAL BANK, and COMMERCIAL SAVINGS BANK, and the use of defendant's business name, COMMERCIAL FEDERAL. Although the strength of the trademark COMMERCIAL SAVINGS, the similarity of the names and goods and services favor a likelihood of confusion, the rest of the factors do not: degree of care exercised by customers, minimal evidence of actual confusion by customers, lack of intent to deceive. Additionally, we believe that given plaintiff's solid reputation in the eight-county area, that it is not likely that any negative comments concerning defendant's bank will affect plaintiff's bank. The fact that there is another bank in the area at which customers may choose to do business is not sufficient to enjoin defen-

8. See First Nat'l Bank, 153 F.3d at 889 (defendant, First National Bank, South Dakota, was enjoined from using the marks "First National" or "First National Bank" within a ten-mile radius of plaintiff, First National Bank, Sioux Falls, because those marks were likely to cause confusion among customers, but defendant was allowed to continue using its full business name); First Savings Bank, F.S.B., 101 F.3d at 647 ("FirstBank" service mark not confusingly similar to "First Bank System"); Sun Banks of Florida v. Sun Fed. Sav. & Loan, 651 F.2d 311, 319 (5th Cir.1981) (no likelihood of confusion between service marks "Sun Federal Savings" and "Sun Banks"; fifteen incidents of actual confusion in three years is negligible); but cf. First Federal, 929 F.2d at 384 (evidence of misdirected telephone calls, mail and business was sufficient evidence to support district court's finding that defendant's name, First Federal Savings and Loan Association of Lincoln, was sufficiently similar to plaintiff's name, First Federal Savings and Loan Association of Council Bluffs, so as to create a likelihood of confusion).

dant's use of that name in its business. We do not believe that the similarity between the business names used by plaintiff and defendant will cause a likelihood of confusion such that customers of Commercial Savings will be so confused that they will inadvertently do their banking business with Commercial Federal.

### V. Disposition.

We conclude that plaintiff Commercial Savings has a protectable trademark in the name COMMERCIAL in its banking products and services. However, we conclude that plaintiff failed to show that defendant Commercial Federal's use of a similar business name is likely to cause confusion among consumers concerning banking products and services provided by plaintiff and defendant. Commercial Savings therefore failed to show its common-law trademark in the name COMMERCIAL was infringed and therefore is not entitled to injunctive relief. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**