# IN THE SUPREME COURT OF IOWA

No. 07–1258

Filed December 12, 2008

**COMMUNITY STATE BANK,
NATIONAL ASSOCIATION,**

Appellee,

vs.

**COMMUNITY STATE BANK,**

Appellant,

and

**IOWA SUPERINTENDENT OF BANKING,**

Intervenor.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Plaintiff bank challenges court of appeals decision overturning district court's finding that it had a common law trademark and order enjoining defendant bank from using that mark. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Phil Watson of Phil Watson, P.C., Des Moines, and James L. Sayre of James L. Sayre, P.C., Clive, for appellant.

Edward J. Sease, Jeffrey D. Harty, and Christine Lebron-Dykeman of McKee, Voorhees & Sease, P.L.C., Des Moines, for appellee.

Shauna Russell Shields, Assistant Attorney General, for intervenor.

**STREIT, Justice.**

Two different banks in Des Moines claim the name "Community State Bank." Community State Bank, National Association (CSB) began using the name "Community State Bank" in Polk County in 1993 and in Des Moines proper in 1997. Community State Bank, Indianola (Csb Indianola) began using the name "Community State Bank" in Lucas and Warren counties in 1993 and in Des Moines in 2005. CSB filed a petition asking the district court to issue a declaratory judgment against Csb Indianola for common law trademark infringement and an injunction preventing Csb Indianola from using the name "Community State Bank." The Iowa Superintendent of Banking intervened, arguing that Iowa Code section 524.310(1) (2004) prohibits a national bank from using the word "state" in its name. Both CSB and Csb Indianola filed for summary judgment, and the district court determined Iowa Code section 524.310(1) only applies to legally-chartered names, not trademark names. At trial, the district court found Csb Indianola infringed CSB's valid common law trademark and issued an injunction. The court of appeals reversed. Because we determine "Community State Bank" has acquired secondary meaning, CSB has a protectable trademark in the name "Community State Bank" and Csb Indianola infringed that mark. We vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts.

CSB began business in 1902 as the Bank of Ankeny. In 1933, it reincorporated as Ankeny State Bank. In May 1993, it merged with Altoona State Bank and changed its name to "Community State Bank," maintaining facilities in Ankeny and Altoona, both in Polk County. In July 1996, it purchased East Des Moines National Bank, which had

three locations in Des Moines and one in Pleasant Hill. In May 1997, CSB merged all of its locations and changed the name of the banks to "Community State Bank." On April 1, 2003, CSB converted from a state-chartered bank to a nationally-chartered bank, Community State Bank, National Association.

A few days after CSB converted to a national charter, the Iowa Superintendent of Banking sent a letter to CSB's president demanding that CSB remove the word "state" from its name because it was no longer a state bank, and using the word "state" is a deceptive practice. CSB refused to change its name saying that it was no longer a state-chartered bank, and therefore not subject to Iowa banking regulations. Rather than challenging CSB, the Iowa Division of Banking sponsored legislation prohibiting the word "state" in a national bank's legally-chartered name. This amendment to Iowa Code section 524.310(1) became effective in 2004. Iowa Code § 524.310(1).

CSB continued to use the name "Community State Bank" and the "CSB" logo at all of its branches. As of March 2005, when CSB brought this claim, it had nine locations in Polk County: Altoona, Ankeny (3), Des Moines (3), Johnston, and Pleasant Hill. Later it established a location in Waukee in Dallas County.

Csb Indianola came into existence in March 1993, when it acquired a small bank in Lucas County and moved its charter to Indianola in Warren County. In doing so, it changed its name to "Community State Bank." At this time, the main office was located in Indianola, with a small branch in Lucas. In 1999, Csb Indianola opened a new bank on Army Post Road in south Des Moines under the name "Fort Des Moines Community Bank." Csb Indianola opened an additional branch in Indianola in 2000 and another branch in 2003 in

Norwalk, also in Warren County. In late 2004, all five locations merged into a single entity named "Community State Bank." In January 2005, the Fort Des Moines Community Bank was renamed "Community State Bank, Fort Des Moines Branch," as it is located on a historic site requiring the use of the name "Fort Des Moines."

CSB is substantially larger than Csb Indianola. As of mid-2006, CSB had approximately $406 million in deposits, compared to Csb Indianola's $80 million. CSB advertised extensively in Polk County, spending more than a quarter million dollars each year from 2004 to 2006 and more than two million dollars since 1993 advertising in local newspapers, on the radio and television, and through direct mailings, billboards, flyers, and brochures. The majority of the advertising contained the CSB logo, "CSB" written in lowercase script with "community state bank" and "redefining simple" written in the same font below. Csb Indianola, on the other hand, spent far less on advertising and concentrated its advertising efforts in Warren County with minimal coverage in abutting Polk County.

After Csb Indianola's Fort Des Moines branch changed its name to "Community State Bank," there were instances where customers were confused about the two banks, including misdirected night deposits, customers attempting to cash checks at the wrong banks, receipt of correspondence at one bank intended for the other bank, and mailing deposits to CSB when intended for Csb Indianola. Further, several customers telephoned Csb Indianola's Fort Des Moines branch thinking they were calling CSB.

In March 2005, two months after Csb Indianola's Fort Des Moines branch changed its name to "Community State Bank," CSB filed a petition asking the court to issue a declaratory judgment against Csb

Indianola for common law trademark infringement and unfair competition. CSB also asked for a temporary or permanent injunction preventing Csb Indianola from using the name "Community State Bank." In September 2005, the district court issued a temporary injunction enjoining Csb Indianola from using the name "Community State Bank" and the monogram of "CSB" at its Fort Des Moines location. Both parties filed motions for summary judgment, and the Iowa Superintendent of Banking filed a motion to intervene, which was granted.

In its ruling on the summary judgment motions, the district court determined Iowa Code section 524.310(1), which prohibits the use of the word "state" in a national bank's legally-chartered name, does not prohibit CSB from using the word "state" in its trademark name. At trial, the court found CSB had a protectable trademark in the name "Community State Bank," since the name had acquired secondary meaning, and Csb Indianola infringed that mark. The court ordered Csb Indianola be permanently enjoined from using the name "Community State Bank" in Polk County.

Csb Indianola appealed, and the court of appeals reversed, finding CSB failed to prove its trademark was inherently distinctive. It also determined Iowa Code section 524.310(1) was prospective in operation, and thus did not prohibit CSB from using the word "state" in its name. Further, the court of appeals raised the doctrine of unclean hands sua sponte but failed to invoke it without CSB having an opportunity to refute its application.

**II. Scope of Review.**

Our standard of review in equity cases, including trademark infringement actions, is de novo. Iowa R. App. P. 4. We give weight to

the factual findings of the trial court, although we are not bound by them. Iowa R. App. P. 14(*f*)(7).

**III. Merits.**

Trademarks are words, names, or symbols used to identify a person's goods or services and distinguish them from those of another. *Commercial Sav. Bank v. Hawkeye Fed. Sav. Bank*, 592 N.W.2d 321, 326 (Iowa 1999); *see also* 15 U.S.C. § 1127 (2008). A trademark is a common law property right, and protection from infringement does not require registration of the mark. *Commercial Sav.*, 592 N.W.2d at 327. As we have explained,

> Trademark infringement is considered a form of unfair competition because the similarity in marks could lead a prospective buyer [or customer] to believe that the defendant's goods [or services] are those of the plaintiff. Thus, potential customers may be attracted to the reputation and name built up by the first user. The danger is not that the sophisticated buyer will actually purchase from the defendant/second user believing that he has purchased from the plaintiff/first user, but rather that the purchaser will be misled into an *initial* interest in defendant based on a mistaken belief as to a potential interrelationship between the two businesses.

*Id.* (citations omitted).

In order to succeed on a common law trademark infringement claim and obtain injunctive relief, the plaintiff must prove (1) it has a valid trademark, and (2) infringement by the defendant. *Id.* at 326. In order to demonstrate the existence of a valid trademark, "the plaintiff must prove that there has been *use* of a name or designation that is sufficiently *distinctive* such that customers (i.e. customers and potential customers) identify the mark with the goods or services provided by the [plaintiff]." *Id.* at 327.

**A. Secondary meaning.** The key issue in this case is whether the name "Community State Bank" is "sufficiently distinctive of [CSB's] goods or services such that it deserves protection against use or infringement by [Csb Indianola]." *Id.* In determining whether a name is sufficiently distinctive, courts classify the alleged trademark into one of four categories: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Id.* Generic designations are words that are of a general type of goods or services and are not entitled to protection under trademark law. Restatement (Third) of Unfair Competition § 15 cmt. a (1995). Descriptive designations are "merely descriptive of the nature, qualities, or other characteristics of the goods, services, or business with which it is used." *Id.* § 14. Suggestive designations are "words that are merely suggestive of the nature or characteristics of the product or business." *Id.* § 13 cmt. c. Fanciful terms have no meaning other than identifying the word or symbol, and arbitrary terms are existing words whose meaning has no apparent connection to the particular service or good they represent. *Id.* Both suggestive designations and arbitrary or fanciful designations are inherently distinctive and protectable without any additional proof of distinctiveness. *Id.*

Descriptive designations are not inherently distinctive and can only be protected under trademark law if the term has acquired secondary meaning. *Id.* § 13 cmt. e; *see also Commercial Sav.*, 592 N.W.2d at 328. Secondary meaning attaches to a descriptive designation when the term has become "uniquely associated" with the product or service, in that, "as a result of its use, prospective purchasers have come to perceive it as a designation that identifies [the specific] goods, services, [or] business[]." Restatement § 13(b) cmt. e. In order to establish secondary meaning, the plaintiff must demonstrate the public understands its name to represent

its goods or services. *Commercial Sav.*, 592 N.W.2d at 328. A plaintiff can establish secondary meaning with direct or circumstantial evidence, such as consumer testimony and surveys, proof of actual consumer confusion, exclusivity of use, advertising and promotional efforts, and market share. *Id.* at 329; *see also* Restatement § 13 cmt. e.

In this case, it is undisputed that the name "Community State Bank" is descriptive. The parties are disputing whether the name "Community State Bank" has acquired secondary meaning. Upon our de novo review, we agree with the district court's finding that "Community State Bank" had acquired secondary meaning.

First, CSB has used the mark "Community State Bank" continuously for twelve years. We disagree with the court of appeals' determination that twelve years of continuous use was not sufficient in the banking trade.[1] There is no length-of-use threshold that must be met in order to demonstrate secondary meaning. However, the Lanham Act provides that the trademark commissioner may accept five years of continuous use as prima facie evidence of secondary meaning. 15 U.S.C. § 1052(f) (2008). Although federal trademark law is not controlling in this case, we, as well as other courts, have looked to the Lanham Act for assistance in common law trademark cases. *See Commercial Sav.*, 592 N.W.2d at 329; *DaimlerChrysler AG v. Bloom,* 315 F.3d 932, 936 n.3 (8th Cir. 2003). Although the five-year presumption in the Lanham Act does

[1]The court of appeals relied on other cases discussing secondary meaning in the banking industry as a yardstick to measure whether CSB had used its mark long enough to acquire secondary meaning. In *Commercial Savings*, the bank had used its name in eight counties for seventy-four years. *Commercial Sav.*, 592 N.W.2d at 329. In *First Federal Savings & Loan Ass'n of Council Bluffs v. First Federal Savings & Loan of Lincoln*, 929 F.2d 382, 384 (8th Cir. 1991), exclusive use for thirty-five years was sufficient to establish secondary meaning.

not, in itself, establish that "Community State Bank" has acquired secondary meaning, it is a factor weighing in favor of secondary meaning.

In addition to length of continuous use, CSB provided direct evidence, in the form of consumer surveys, indicating "Community State Bank" had acquired secondary meaning. CSB's expert created a "Teflon Survey" to determine whether a representative sample of banking customers in Polk County considered "Community State Bank" a brand indicating source or a type.[2] The results of the survey indicate over 90% of respondents labeled "Community State Bank" as a brand, not a type, which suggests the name "Community State Bank" had acquired secondary meaning in Polk County. While the court of appeals discounted the credibility of the survey, we find it helpful in our determination and supportive of the conclusion that CSB was a recognized brand.

CSB was also involved in the community and advertised extensively in Polk County. CSB spent over a quarter of a million dollars on advertising each year from 2004 to 2006, and over two million dollars total since 1993. CSB has advertised its services under the name "Community State Bank" and the "CSB" logo through newspaper, radio, television, magazines, direct mail, billboards, yellow page ads, on the side of delivery vans, and yard signs for construction projects. Additionally,

---

[2]The "Teflon Survey" is often used in trademark cases to establish secondary meaning where the disputed mark is comprised of common descriptive terms. *See E.T. Browne Drug Co. v. Cococare Prods.*, 538 F.3d 185, 195 (3d Cir. 2008). In a "Teflon Survey," participants are given an explanation of the difference between generic terms and brand names. *Id.* Then the survey runs the participant through a series of terms (such as "pop" and "Coke") asking whether they are types or brands. *Id.* Once the participant grasps the distinction between the two, the survey asks the participant to categorize several terms, including the one at issue. *Id.* The survey in our case asked 390 participants to indicate whether the following are brands or types: automobile, Nike, laundry detergent, life insurance, Community State Bank, Hy-Vee, medical clinic, and Budweiser.

CSB supports local organizations and causes in the Des Moines community. In comparison, Csb Indianola focused its advertising efforts in Warren and Lucas counties.

Further, CSB has consistently controlled more of the market in Polk County than Csb Indianola. As of mid-2006, CSB had approximately $406 million in deposits, compared to Csb Indianola's $80 million. In June 2006, the market share in Polk County was 4.6% for CSB and 0.22% for Csb Indianola.

As CSB used its mark "Community State Bank" continuously and exclusively for twelve years, spent significant amounts on advertising, and had a substantially larger percentage of the market share in Polk County, together with the results of the "Teflon survey" indicating 90% of respondents identified "Community State Bank" as a brand, we determine CSB acquired secondary meaning. Therefore, CSB had a valid common law trademark in the name "Community State Bank."

It does not matter that Csb Indianola used the name "Community State Bank" first.[3] A senior user is only protected in the market where he has established use of his trademark. *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 928 (8th Cir. 1967). In the two months between when Csb Indianola started using the name "Community State Bank" and when CSB began using the name, Csb Indianola had not established a valid common law trademark in the name "Community State Bank" at all, let alone in Polk County. As establishing common law trademark rights in descriptive names takes time (since the mark has to acquire secondary meaning), Csb Indianola cannot claim trademark rights in the name

---

[3]Csb Indianola began using the name "Community State Bank" in March 1993 in Lucas and Warren counties. CSB began using the name "Community State Bank" in May 1993 in Ankeny and Altoona, both in Polk County.

"Community State Bank" in Polk County when CSB first began using the mark. *Commercial Sav.*, 592 N.W.2d at 327.

**B. Infringement.** Now that we have determined CSB has a valid common law trademark in the name "Community State Bank," we must decide whether Csb Indianola has infringed that mark. If so, CSB is entitled to injunctive relief. *Id.* at 326. A trademark has been infringed when the defendant's use of a similar designation will cause a likelihood of confusion among customers. *Id.* at 330; *see also* Restatement § 20. Demonstrating actual or potential economic injury is not necessary to find infringement. *Sweetarts*, 380 F.2d at 927. The plaintiff need only show a likelihood of confusion. *Id.* In determining whether there is a likelihood of confusion between the two marks, we consider

(1) the strength of the trademark;
(2) similarity between the trademark and the defendant's mark;
(3) competitive proximity of the products on which the respective marks are placed;
(4) intent of the alleged infringer to pass off its goods as those of the trademark holder;
(5) incidents of actual confusion; and
(6) degree of care likely to be exercised by potential customers of the trademark holder.

Restatement § 20. " '[T]he relative weight of the factors depends on the facts of the individual case,' . . . and no single one is dispositive." *Commercial Sav.*, 592 N.W.2d at 330 (quoting *First Nat'l Bank, Sioux Falls v. First Nat'l Bank, S.D.*, 153 F.3d 885, 888 (8th Cir. 1998)).

When analyzing the Restatement factors, all but one weighs in favor of CSB. As to the strength of the mark, "Community State Bank" is sufficiently distinctive and has acquired secondary meaning. CSB and Csb Indianola's marks are identical, "Community State Bank." Both banks provide similar products and services. Csb Indianola's Fort Des Moines Branch on Army Post Road is approximately two miles from

CSB's branch located on Southeast 14th Street in Des Moines. Because the two banks are located in close proximity and have the same name, there were several incidents of actual confusion after Csb Indianola renamed its Fort Des Moines branch "Community State Bank." Csb Indianola received one or two calls a day from confused customers. Further, customers sought to deposit and withdraw funds from the wrong bank, and correspondence was sent to the wrong bank, including title companies sending abstracts to the wrong bank. Lastly, although banking customers ordinarily exercise a great deal of care when it comes to banking, given the banks' virtually identical names and their close proximity, even a prudent customer would be confused.

However, Csb Indianola did not intend to pass off its business and services as those of CSB. Csb Indianola's decision to change the name of the Fort Des Moines branch to "Community State Bank" was not in bad faith. Rather, it was simply an attempt to unify the name of all of Csb Indianola's branches. As five out of six of the Restatement factors demonstrate Csb Indianola's use of "Community State Bank" will cause a likelihood of confusion among customers in Polk County, we find that Csb Indianola has infringed CSB's common law trademark.

**C. Injunctive relief.** Csb Indianola argues CSB was not entitled to injunctive relief because CSB did not prove financial harm. In order to be granted a permanent injunction, CSB must demonstrate "(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is no adequate legal remedy available." *Sear v. Clayton County Zoning Bd. of Adjustment*, 590 N.W.2d 512, 515 (Iowa 1999). As we have determined that Csb Indianola infringed CSB's common law trademark, the first requirement has been met. The second requirement

has also been met by demonstrating infringement, "[s]ince a trademark represents intangible assets such as reputation and goodwill, [and] a showing of irreparable injury can be satisfied if it appears that [the plaintiff] can demonstrate a likelihood of consumer confusion." *Gen. Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 625 (8th Cir. 1987). Demonstrating actual financial harm in trademark cases is not required, as injuries arising from trademark infringement are presumed to be irreparable. *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 505 (8th Cir. 1987). Lastly, injunctive relief is the legal remedy commonly sought by plaintiffs once they have succeeded on a common law infringement claim. *See Commercial Sav.,* 592 N.W.2d at 326; *First Bank v. First Bank Sys., Inc.,* 84 F.3d 1040, 1044 (8th Cir. 1996). We agree with the district court that Csb Indianola should be permanently enjoined from using the name "Community State Bank" in Polk County.

**D. Iowa Code section 524.310(1) and deceptive practices.** The Iowa Superintendent of Banking, the intervenor, contended at the trial court level that Iowa Code section 524.310(1) prohibits CSB from using the word "state" in its name. Although CSB's legally-chartered name includes the word "state," the district court, in granting CSB's motion for summary judgment, determined Iowa Code section 524.310(1) does not apply to CSB's *trademark* name, "Community State Bank." We agree. Amended in 2004, the relevant portion of the statute reads, "[a] national bank . . . shall not use the word 'state' in its legally-chartered name." Iowa Code § 524.310(1). The plain language of the statute indicates it applies to *legally-chartered* names. Legally-chartered names are different from trademark names. *See Am. Auto. Ass'n v. AAA Ins. Agency, Inc.,* 618 F. Supp. 787, 797 (W.D. Tex. 1985) (stating "acceptance or approval of a name by a state agency is no defense to an action for infringement or

unfair competition"). Thus the statute does not prevent CSB from using "state" in its trademark name, "Community State Bank."

The district court declined to rule on whether the statute prohibits a bank from using the word "state" in its legally-chartered name, as opposed to a trade name. As the district court pointed out, "the issue of whether or not [CSB] can use 'state' in its *legally chartered* name is a separate issue . . . and not presently before this Court." (Emphasis added.) We agree that this case concerns CSB's trademark name "Community State Bank," and not its nationally-chartered name, "Community State Bank, National Association." CSB commenced this suit to protect its trademark, "Community State Bank," and that trademark claim has been the focus of this litigation. In their petition, pleadings, and appellate briefs, Csb Indianola and the Iowa Superintendent of Banking used the word "name" and did not distinguish between trademark names and legally-chartered names. In this process, they neither argued nor articulated why section 524.310(1) should apply to trade names or why CSB's legally-chartered name has any bearing on its trademark name.

The district court acknowledged in its ruling on the motion for summary judgment that the parties disputed whether using the word "state" was misleading and deceptive. However, at trial, the court did not make any ruling in this regard. Since the district court did not rule on the issue of deceptive practices and none of the parties made an effort to secure a ruling on the issue,[4] the matter has not been preserved for us

---

[4]In their original petitions and appellate briefs, neither Csb Indianola nor the Iowa Superintendent of Banking argued that CSB's trademark should not be entitled to protection because it is misleading. Under the doctrine of unclean hands, misleading trademarks will not be protected. *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 925 (N.D. Iowa 2001). Although the doctrine of unclean hands may be raised sua sponte, based on the failure to develop this issue in the record, we decline to rule

on appeal. *See Teamsters Local Union No. 421 v. City of Dubuque*, 706 N.W.2d 709, 713 (Iowa 2005) ("[E]rror is not preserved for appeal on an issue submitted but not decided by the district court when the party seeking the appeal failed to file a posttrial motion asking the district court to rule on the issue."). Thus we will not rule on the issue of whether CSB's use of the word "state" in its name is a deceptive practice.

**IV. Conclusion.**

CSB has a protectable common law trademark in the name "Community State Bank" because the mark had acquired secondary meaning. Further, Csb Indianola infringed that mark, as evidenced by actual incidents of confusion. Therefore, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

on it. *See Sisson v. Janssen*, 244 Iowa 123, 56 N.W.2d 30 (1952) (stating that the court may invoke doctrine of unclean hands even though neither party pleads it).